## Kates's Estate.

*Wills — Power of appointment — Blending of estates—Election by widow against husband's will—Wills Act of June 7, 1917.*

1. Donees under general powers of testamentary appointment may dispose of the estate, subject to the power, directly to their appointees, or they may reduce it to the possession of their executors and subject it to their debts, expenses of administration and legacies; when the latter course is pursued, it passes as the estate of the donee.

2. Where a testator with an unlimited power under his father's will to appoint a trust fund under his own will expressly blends such trust fund with his own estate, subjecting both to the payment of his debts, disposing of both combined to named legatees, and places half of the residue of the blended estates in trust for his wife, he makes the part of the estate over which he has a power of appointment a part of his own estate at his death for all purposes.

3. In such case, the widow of the testator so appointing may, when she elects to take against his will, demand that there shall be awarded to her not only her share of her husband's individual estate, but also a share of that over which he has exercised the power of appointment.

4. Under section 23 of the Wills Act of June 7, 1917, P. L. 403, the "real and personal estate" of the husband to which the widow becomes entitled to a share by her election is not only his individual estate, but also that which, in the exercise of a power by will, he has made a part of his own estate at the time of his death.

Exceptions to auditor's report.   O. C. Chester Co.

*Holding & Harvey,* for exceptions;  *J. Paul MacElree,* contra.

HAUSE, J., Aug. 25, 1924.—The father of the present decedent died testate in 1895 and gave the residue of his estate to his executors in trust for investment and payment of income to his two children, this decedent and a daughter, for life. Each child was given unlimited power, by the father's will, to dispose of half of the *corpus* of that residue "for the use and benefit of such person or persons and for such estates and uses as said child by his or her last will and testament may direct, limit and appoint."

The son died testate in 1922, leaving to survive him a widow and two sons. The opening clause of his will is this: "I make this will to dispose of as well my own property as the property over which I have a power of appointment under the will of my father." His own estate amounted, approximately, to $19,000 and the estate over which he had power of appointment to $130,000.

Without any reference to the *corpus* of the trust estate under his father's will, except the clause quoted, he blended that estate with his individual estate and disposed of both without distinction and without any effort at separation. He gave legacies to and for certain individuals, directed the payment of his debts out of his personal estate and the residue he gave to his executors in trust for the benefit of his wife as to the income of half of it during her life and the other half to his two sons when they respectively reached the age of twenty-five. The legacies he gave are far in excess of his individual estate.

The widow elected to take against the will, and the auditor held that the estate over which he had power to appoint was not part of her deceased husband's estate and that a widow's share thereof could not be awarded to her.

So far as we are aware, the precise question here presented has not been decided by either of our appellate courts, but, in view of the trend of recent judicial expressions, and in view of the language of the will and the manner in which the testator dealt with the estate over which he had the power of appointment, our conclusion must be that that estate is also subject to the claim of the widow.

Many years ago, Chief Justice Gibson, in speaking of an estate over which a power of appointment may be exercised, said: "An appointee derives title immediately from the donor of the power by the instrument in which it was created, and, consequently, not under but paramount to the appointor by whom it was executed. . . . It is the bounty of the testator and not the property of his steward that is to be dispensed:" Com. *v*. Duffield, 12 Pa. 277. In this case the Chief Justice repudiated the doctrine of the English courts to the effect that such property was liable for the debts of the person having the power, and said of a recent decision upholding that view: "The learned and excellent Master of the Rolls had forgotten, for the moment, the broad line of distinction between property and power."

Prior to the passage of the Act of June 4, 1879, P. L. 88, questions frequently arose as to whether, by general language in a will, testators who had power to appoint had exercised the power. To avoid these controversies, that act provides, in substance, that a general devise of realty or bequest of personalty shall operate as an execution of such power, unless a contrary intention appear in the will.

The doctrine stated by Chief Justice Gibson continued in force and has been consistently applied to the effect that "the appointees do not take through the donee, but by virtue of the original will creating the power:" Huddy's Estate, 236 Pa. 276. Hence, in the case just cited, where a testatrix had power of appointment over a fund and made a will disposing of property without any mention, directly or indirectly, of the power or directing the payment of her debts, it was held that the general language used included both her own property and that over which she had power of appointment, and that, in the latter property, her husband could not share when he elected to take against her will, for the reason stated in the opinion, that "when her will, the instrument exercising the power, went into effect, the property vested in them (her legatees) under and by virtue of the original will creating the power." The court, speaking by Justice Moschzisker, added these significant words: "This is not an instance where the donee of the power, either expressly or by implication, appointed the fund for the payment of her debts, nor did she so blend the fund with her own assets that it is impracticable to pay directly to her appointees. . . . Since there are sufficient funds in the estate of the donee to pay her pecuniary legacies in full, there is no necessity for applying the Act of 1879 so as to throw them upon the trust fund, and the law will not assume that the donee of the power intended to so exercise it; therefore, those to whom she left pecuniary and specific legacies have no interest in this fund, nor, under the facts of the case, have the donee's creditors. It is not necessary to decide what the result would be under other circumstances."

It follows from the language just quoted that a testator might so blend his individual estate with that over which he had power to appoint as to properly conclude that he had made the latter his own. This suggested situation was presented in McCord's Estate, 276 Pa. 459, where a testatrix, with power to dispose by will of the *corpus* of a trust estate under her father's will, declared, in the opening clause of her will, as follows: "It is my intention by this my will to dispose not only of all estate and property which I own or hold in my own right, but also all over which I have any power of appointment, and especially that devised or bequeathed to me by the will of my father, and it is my further intention that the entire estate and property shall be administered by my executors for the purpose of carrying out the provisions of my will." She then directed the payment of her debts and funeral expenses and gave

legacies totaling $55,000, and directed that the inheritance or succession taxes thereon should be paid out of the residuary estate. Her individual estate amounted to $23,500 and the trust estate under her father's will to $77,000. All of the legatees were collateral to her, but many were lineal descendants of her father, and in the settlement of the estate her executors blended the two funds and the Commonwealth claimed collateral tax on the aggregate, notwithstanding that numerous legatees were her father's lineals, to whom, by the power of appointment, she had given the *corpus* of her father's estate. If, therefore, the well-established doctrine that these lineals, as appointees, took their legacies from the donor through the donee as the "steward" of the fund, and not as parts of the donee's estate, applied, the tax was not collectible. But the Supreme Court, speaking by Justice Walling, in sustaining the Commonwealth's claim, said: "The general rule undoubtedly is that an estate given under a power of appointment passes to the appointee from the donor and forms no part of the estate of the donee. . . . In such case, where the appointee is a lineal descendant of the donor, the legacy is not subject to collateral inheritance tax." With the old rule thus recognized, it was not possible to subject the legacies of the lineals to tax unless the entire blended estates were to be treated as the individual estate of the donee of the power, and so they were treated. Justice Walling continues: "Here, however, Ella McCord's power of appointment by will being unlimited, she could transfer the trust fund to her own estate, and did so in unmistakable language, *making it a part thereof for all purposes*. . . . It thus became blended with her other property as one estate from which debts and legacies were payable. . . . While she was not the owner of the *corpus* of the trust fund in her lifetime, she was the owner of the power, which she exercised, of *making it a part of her estate at her death*. . . . Donees, under general powers of testamentary appointment, may dispose of the estate, subject to the power, directly to their appointees, or they may reduce it to the possession of their executors and subject it to their debts, expenses of administration and legacies. When the latter course is pursued, *it passes as the estate of the donee*."

In the dicussion of the case just referred to in the Supreme Court, attention was called to Huddy's Estate, 236 Pa. 276, and Justice Walling said: "In Huddy's Estate and other cases called to our attention, the trust fund passed from the donor's estate to the appointee *with no blending of the two estates*."

The conclusion reached in McCord's Estate, 276 Pa. 459, and the reasons supporting it were approved and followed in Forney's Estate, 280 Pa. 282.

We have, then, before us the case of a testator with an unlimited power to appoint a trust fund expressly blending that fund with his own estate, subjecting both to the payment of his debts, disposing of both combined to named legatees and placing half of the residue of the blended estates in trust for his wife for life. Under the circumstances and with these conditions present, our court of last resort has said that that part of the estate over which the testator had power of appointment he made part of his own estate "for all purposes." By exercising the power in the manner he did, he made the trust estate "part of his estate at his death," and "it passes as the estate of the donee."

The blended estates are in the hands of the executors for distribution. They together were made his own property by the terms of the will of this testator "for all purposes." When, then, the widow, not bound by the provisions of the will and electing to take against it, requests that the executors give to her the share of her husband's property indicated for her by the intestate laws, may they reply with the suggestion that the estate in their hands is the estate

of the testator "for all purposes" except when distribution is to be made to the widow, and then the major portion of it belongs to the estate of her husband's father, and in that portion she may not share?

The power of this testator to make the trust fund a part of his own estate is distinctly stated in McCord's Estate, 276 Pa. 459, and that by blending it with his own estate he unmistakably did so is not open to question. His executors, as his representatives and as the representatives of his estate, are now in possession of the blended funds. Do these blended funds cease to constitute his estate and become separate and distinct when the widow seeks her distributive share? If the plain language used by the Supreme Court is to be given effect, then, when this testator, by the language he used in his will, made the trust fund a part of his estate "for all purposes," that act must abide the legal consequences. The blended funds are his estate, and they must be distributed as the law directs. The widow is privileged to take against the will, as she has done, and she is entitled to share in the distribution of the trust fund because the law authorized her husband to, and he unmistakably did, make it his own. When his death occurred, the rights of his widow became fixed. The will fastened upon the trust fund the badge that fixes it as part of his estate, and when he died that trust fund was then part of the estate of the deceased spouse, made so by him, and of it his widow is entitled to her share under the Intestate Act. As he created it as a part of his estate by his will and then died, so it must remain when his estate is in course of distribution. It cannot be his for the purpose of imposing taxes, paying his debts and satisfying his legatees and then be suddenly transformed into the estate of some other person when the surviving spouse's claim is presented. He transferred the trust fund to his own estate by his will, as the Supreme Court said he had power to do, and there it must remain "for all purposes," and this includes distribution to the widow.

While the 23rd section of the Wills Act of 1917 provides that if there be an election to take against the will, the surviving spouse "shall be entitled to such interests in the real and personal estate of the deceased spouse as he or she would have been entitled to had the testator died intestate," this language, when applied here, is susceptible of but one construction. The inquiry is not whether, prior to the death of the spouse, he had an estate of his own and another subject to his appointment, but what was his estate when his death occurred as formed and fixed by his will? It may be correctly said, referring to the language of the Supreme Court in Huddy's Estate, that, without more, property over which a power of appointment exists is not and never was the "real and personal estate" of this testator, but whether it should become his property, depended wholly, as the Supreme Court said in McCord's Estate, upon whether he made it a part of his estate at his death, and that this testator did so is beyond question.

When, therefore, we apply the 23rd section of the Wills Act, the question is, what is the "real and personal estate" of this testator? And to this there can be but one answer, in the light of the testator's exercise of his unlimited and unrestricted power of appointment. His estate is the combination of the two estates, so made by him, and when, of these, the widow seeks her share as though her husband had "died intestate," this expression only measures the proportion she is entitled to have of the estate as he created and left it. The will is still in existence, and by its terms the character and extent of his estate is to be determined, and not by ascertaining of what his individual estate would have consisted had no will in fact been made.

That this testator's will must be given, as respects the widow, full testamentary effect upon his estate, notwithstanding her claim to her distributive share as measured by the Intestate Act, is expressly ruled in Huddy's Estate, 236 Pa. 276. There, pecuniary legacies were given with no reference to the power of appointment and no direction to pay debts. The surviving husband elected to take against the will, and he was awarded his share of his deceased wife's individual estate, and this estate was sufficient to pay the pecuniary legacies and his distributive share. The residue of the estate—and this was held to include the fund over which testatrix had power of appointment—was directed to be divided by the will and half of it was given to the surviving husband for life, and to this he was held to be entitled, although it was no part of his wife's individual estate and notwithstanding he had elected to take against the will.

The estate of this testator must be distributed, so far as his widow's rights are concerned, as though he had died intestate, but to determine what that estate is resort must be had to the will, and inasmuch as, by that instrument, he made the trust fund a part of his own estate, his widow is entitled to her share therein.

The exceptions to the report of the auditor are sustained and the report is recommitted to the auditor so that distribution may be made in accordance with this opinion. From Truman D. Wade, West Chester, Pa.