Edward Tyler Blair and William McCormick Blair, as Trustees Under the Last Will and Testament of William Blair, Deceased, Appellees, v. Lucy Blair Linn et al., Appellants.

### Gen. No. 37,406.

O'Connor, J., dissenting.

Heard in the first division of this court for the first district at the February term, 1934. Opinion filed March 5, 1934.

Wilson & McIlvaine, for appellants; J. F. Dammann and Calvin F. Selfridge, of counsel.

Cutting, Moore & Sidley, for appellees; Donald F. McPherson and Philip H. Schofield, of counsel.

Mr. Justice McSurely delivered the opinion of the court.

This appeal presents the question whether Edward Tyler Blair, a defendant, could assign a portion of the trust income devised to him by his father's will

before he received it. The trustees filed their bill asking the court to construe the will in this respect. The superior court held that the law did not permit Mr. Blair to do this, and the defendants appeal to this court.

William Blair, deceased, by his will created a trust estate, naming as trustees his nephew, Chauncey Blair (succeeded by complainant William McCormick Blair) and his son, Edward Tyler Blair; by the terms of the trust the wife of the testator was to receive one-half of the net income of the trust estate during her life, and his son, Edward Tyler Blair, was to receive the other half during his life; after the death of the testator's wife the son was to receive the whole income of the trust during his life; at his death the *corpus* of the trust to be distributed among his children.

Testator's wife subsequently died, and thereafter Mr. Blair executed certain written assignments of portions of his income to his children, aggregating approximately $60,000 a year; the trustees accepted these assignments and accordingly from time to time paid over the portions of the income so assigned to his children.

The commissioner of internal revenue sought to have Mr. Blair pay taxes on the entire amount of the income from his father's estate, regardless of the fact that approximately one-half of it had been assigned to his children. The board of tax appeals recognized these assignments and held that Mr. Blair should pay an income tax only on the amount actually received by him. The commissioner of internal revenue appealed to the Circuit Court of Appeals for the Seventh Circuit, which court reversed the order of the board, holding that Mr. Blair could not lawfully make the assignments to his children and that he should be taxed upon the entire income of his father's estate. *Commissioner of Internal Revenue v. Blair,* 60 F. (2d) 340. The chil-

dren, who are the assignees from Mr. Blair and also the remaindermen after his life estate, were not before that court. The federal court did not adjudicate the property rights but decided only the amount of the income of Mr. Blair which should be taxed. That court recognized that those rights were to be determined by the courts of Illinois, citing *Spindle v. Shreve,* 111 U. S. 542. In the recent case of *Freuler v. Helvering,* 54 Sup. Ct. 308, the Supreme Court holds that the decision of the state court determining the property rights of the taxpayer is conclusive in determining his federal income tax although the federal court in the income tax case had reached a different result as to the same property rights. It follows, therefore, that although the federal court has construed the instant will, and certiorari to the Supreme Court of the United States has been denied, yet this court, while giving weight to the opinion of the federal court, must use its own judgment in determining whether the assignments in question are permissible under the law of Illinois.

The particular paragraph of the will which the federal court held prohibits these assignments is as follows:

"I do hereby declare and direct that the income from said trust fund and estate which is herein ordered to be, from time to time, as the same shall be received, paid to my said wife and to my said son and to his said wife and to their children and descendants of children in the cases aforesaid, shall be paid to them directly upon their separate order and receipt therefor, for their sole and separate use respectively, and that the same shall not be nor be made nor held in any manner nor by any proceedings whether in law or equity while yet in the hands of said trustees liable for or subject to the payment of any of the debts or obligations of either of the persons entitled to the same as above herein set forth."

As a general proposition, restraints on alienation are looked upon with disfavor by the Illinois courts. *Davis v. Hutchinson,* 282 Ill. 523; *Merchants' Loan & Trust Co. v. Patterson,* 308 Ill. 519. However, there are Illinois cases which sustain restraints on alienation where the same is clearly expressed in the document. In *Steib v. Whitehead,* 111 Ill. 247, the restriction was that the income should be paid to the daughter of the testator "in person, and not upon any written or verbal order, nor upon any assignment or transfer" by her. In *Congress Hotel Co. v. Martin,* 312 Ill. 318, the will specifically provided that the income should be paid only into the hands of the beneficiaries, in person, "and not upon any written or verbal order, nor upon any assignment or transfer thereof by said beneficiaries, or by operation of law." The following cases were also cited by the federal court, but none of them involved the question of alienation by a beneficiary: *Bennett v. Bennett,* 217 Ill. 434, involved an ordinary trust fund from which the beneficiary was to receive only the income; he filed a bill in chancery alleging that he was in debt and needed the *corpus* of the trust. The court dismissed his bill, saying that the purpose of the trust had not been completed. *Wallace v. Foxwell,* 250 Ill. 616, involved the question whether the trustee under the will should pay the income to the son of the testator and his wife in equal shares, or all of it to the wife. The court found there was no vested interest in the son. In *Jones v. Harrison,* 7 F. (2d) 461, it was held that the interest of the beneficiary did not pass to the trustee in bankruptcy. In *Hartley v. Unknown Heirs of Wyatt,* 281 Ill. 321, the beneficiary under a will persuaded the trustee to convey a farm to him. The court held the trust was active and the trustee had no power to do this. So also in *King v. King,* 168 Ill. 273, *Wagner v. Wagner,* 244 Ill. 101, and *Leary v. Kerber,* 255 Ill. 433, respectively, the question of alienation by a beneficiary was not involved.

The federal court seems to have relied largely upon the decision in *Hopkinson v. Swaim,* 284 Ill. 11. There the trustees were ordered to pay the income to the beneficiary, a daughter, "directly, free and exempt from the power and control of any husband and from liabilities for any debts or engagements." This restriction clearly evidenced the intention of the testator that the husband of his daughter should have no control or power over her income; however, the daughter joined with her husband in making an assignment of her interest. The court held it invalid because of this restrictive provision. In other words, the assignment of the husband and daughter was precisely what the testator intended to prevent. The instant case is quite different. Here the testator intended that his grandchildren should have the benefit of the income from his estate upon the death of his son. The assignments are consistent with the intention of the testator as expressed in the will.

Moreover, the will in the *Hopkinson* case, as noted in the opinion (page 20) had already been construed by the Supreme Court of Pennsylvania, the State where it was made, as creating a spendthrift trust, limiting the rights of the beneficiaries. *Ewalt v. Davenhill,* 257 Pa. St. 385.

While our Supreme Court has decided that restraints on the rights of creditors will be given effect, and also, that an expressed restraint on alienation will be enforced, in no case has it been held that an implied restraint will be enforced.

In *Binns v. LaForge,* 191 Ill. 598, the life beneficiary assigned her interest as security for her debt; a creditor sought to realize on this and was met with the claim that the assignment was invalid; there was no language in the will restricting alienation but the beneficiary claimed that the statute, ch. 22, sec. 49 (Cahill) denied to creditors of a *cestui que trust* the right to seize income in the hands of a trustee, hence

her assignment to a creditor was void. The Supreme Court held that while a creditor could not seize the income, her voluntary alienation to a creditor was valid, saying that the statute "is not designed to protect the trust fund from the voluntary alienation of the *cestui que trust,* and there being no restriction in this will, there is no reason why Gertrude M. Talbot (the life beneficiary) might not in equity assign said income, or a part thereof, to James Ryan (the creditor) as security for a debt which she owed him."

In *O'Hare v. Johnston,* 273 Ill. 458, the court had before it the question whether a certain trust was a spendthrift trust, with restraint upon alienation by the beneficiary, a son, of his interest in the trust. The court said that there was no language in the will to that effect, and, citing the fact that the testator in the same will had given the son large sums of money and had appointed him one of his executors, said that the testator would hardly have done this if he had considered the son a person not to be trusted with business matters, and refused to construe the trust document as a restraint upon alienation.

William Blair had complete confidence in the business ability of his son, as he named him as one of the executors and one of the trustees. All the circumstances indicate that William Blair did not intend to create a spendthrift trust but only to protect the trust property from involuntary transfers.

Kales on Future Interests, par. 742, page 861, says:

"A mere trusteeship, even though it is for the protection of the beneficiaries, ought not, as a matter of taste, if for no other reason, to be called a 'spendthrift trust.' Only where there is added to the trusteeship express restraints on alienation is it justifiable to call the creation a spendthrift trust. Whether restraints on alienation, voluntary or involuntary, or both, are added ought to be determined by the appli-

cation of the usual principles of construction to the language used. If the restraint is not expressed, no amount of extrinsic evidence or speculation and conjecture as to the testator's or settlor's inducement ought to be permitted to inject it into the will or settlement."

In *Ames v. Clarke,* 106 Mass. 573, the will contained a provision that no part of the bequest should be liable for the debts of the beneficiary; the beneficiary assigned his bequest to another; the validity of this assignment was questioned, but the court said: "The proviso that it should not be liable for his (the beneficiary's) debts while in the hands of the executor did not give the executor any authority to control his disposition of it nor deprive him of the right to dispose of it by his voluntary act."

From all these decisions we draw the conclusion that the Illinois courts view with disfavor restrictions on alienation; that while restrictions specifically expressed will be enforced, if the restraint is not expressed no speculation or conjecture should be permitted to inject it into the will.

It is obvious that decisions in other cases involving different language can give us only general rules. "Cases on wills may serve to guide us with respect to general rules in the construction of devises in wills, but unless a case cited be in every respect directly in point and agree in every circumstance with that in question, it will have little or no weight with the courts, who always look upon the intention of the testator as the polar star to direct them in the construction of wills." *O'Hare v. Johnston, supra.*

The words said to prohibit the assignments are, that the income should be paid to the testator's wife and to his son "directly upon their separate order and receipt therefor, for their sole and separate use. . . ." There is force in the suggestion that the word "order"

means something other than a payment into the hands of the testator's wife and son. The word "order" means a writing "requiring the party to whom it is addressed to deliver property of the person making the order to some one therein described." 3 Bouvier's Law Dictionary, Rawle's Third Revision, 2423. The trustees were required to pay the income to the life beneficiaries without any order from them. That mandate was in the will itself. To pay the income to someone other than a beneficiary would require an order on the trustees signed by the beneficiary. The language of the will implies the very thing that has been done by the assignments.

It is important to note that the assignments to Mr. Blair's children were to the same persons who were, under the will, remaindermen, and who, in all probability, would receive the trust property on the death of their father. The effect of the assignments is merely to accelerate the gifts of the grandfather, the testator, to his grandchildren. *England v. England,* 223 Ill. App. 549, and *Tuttle v. Gunderson,* 254 Ill. App. 552, involved cases where the will contained a clearly expressed restraint on voluntary alienation, but it was held in each case the testator did not intend to exclude from participating in the income the members of the family of the beneficiary.

If the testator had intended to restrict voluntary alienation by his son, this could have been readily accomplished by the use of a very few words. That he did not use such words is strong evidence that he did not so intend. Words, even of doubtful meaning, should not be so construed as to inject an intention into the will manifestly contrary to that of the testator.

For the reasons indicated, we hold that the questioned assignments are valid, and the decree of the lower court is reversed and the cause remanded, with

directions to enter a decree consistent with what is said in this opinion.

*Reversed and remanded with directions.*

MATCHETT, P. J., concurs.

O'CONNOR, J., dissents.

MR. JUSTICE O'CONNOR dissenting: In *Hopkinson v. Swaim,* 284 Ill. 11, the court said (p. 23): "There could be no such exemption from liability for debt if the beneficiary could convey or assign the income, for if she could do so it could also be seized in execution or attachment or reached by a creditor's bill."

In my opinion the *Hopkinson* case is not distinguishable from the case at bar and therefore the decree of the superior court should be affirmed.