**ESTATE of Mervin G. PIERPONT, Deceased, Union Trust Company of Maryland and Ernest L. Poyner, Executors, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 9398.

United States Court of Appeals Fourth Circuit.

Argued June 19, 1964.

Decided Sept. 4, 1964.

John S. McDaniel, Jr., Baltimore, Md. (John W. Cable, III, and Lawrence A. Kaufman, Baltimore, Md., on brief), for petitioners.

Benjamin M. Parker, Atty., Dept. of Justice (Louis F. Oberdorfer, Asst. Atty. Gen., and Lee A. Jackson and Robert N. Anderson, Attys., Dept. of Justice, on brief), for respondent.

Before BRYAN and J. SPENCER BELL, Circuit Judges, and HEMPHILL, District Judge.

J. SPENCER BELL, Circuit Judge:

The Estate of Mervin G. Pierpont petitions for review of the Tax Court's decision that the estate was not entitled to a marital deduction with respect to a testamentary trust. The Tax Court concluded that the power granted by Pierpont's will to the life beneficiary, his wife, Lallah R. Pierpont, did not constitute, under Maryland law, a power to appoint the corpus of the trust to her estate within the meaning of § 2056(b) (5) of the Internal Revenue Code of 1954. The language employed in creating the Lallah R. Pierpont Trust, quoted below, makes it clear that Pierpont desired to take advantage of the marital deduction provisions of § 2056(b) (5). Concededly the only controversy before the Tax Court and before this court on appeal is whether or not the power created met the third condition prescribed under Treasury Regulations, § 20.2056(b)–5:

"Sec. 20.2056(b)–5. Marital deduction; life estate with power of appointment in surviving spouse.

"(a) In general. Section 2056(b) (5) provides that if an interest in property passes from the decedent to his surviving spouse (whether or not in trust) and the spouse is entitled for life to all the income from the entire interest * * *, with a power in her to appoint the entire interest * * *, the interest which passes to her is a deductible interest, to the extent that it satisfied all five of the conditions set forth below * * *:

\* \* \* \* \* \*

"(3) The surviving spouse must have the power to appoint the entire interest * * * to * * * her estate."

In reaching the conclusion that the third condition had not been met, the Tax Court did not deem itself bound by a decree of the Circuit Court of Baltimore City, a *nisi prius* court, that Lallah held the requisite power of appointment.

In the fall of 1948, following the passage of the Internal Revenue Act of 1948, Pierpont began discussions with officers of a Maryland Trust Company concerning the preparation of his will. During these discussions, Pierpont expressed the dual desires to make adequate provision for his wife and to minimize estate taxes by taking advantage of the recently enacted marital deduction provision of the Internal Revenue Code. Trust Company officials suggested that Pierpont set up a testamentary trust, in favor of his wife, providing for income payments to her for life and granting her the power to appoint the principal at her death. These suggestions were followed, and Pierpont's attorney created the Lallah R. Pierpont Trust under Item Sixth of his will. Pertinent portions of the Trust provided:

> "ITEM SIXTH: Provided my said wife shall survive me, I direct my Executors to determine an amount which will be equal to one-half of my "Adjusted Gross Estate" (as defined in Paragraph (2) (A) of subsection (e) of section 812 of the U. S. Internal Revenue Code as amended by the Revenue Act of 1948) and to deduct from such amount the total value, as finally determined for Federal Estate tax purposes of all other interests in property which are included in my Adjusted Gross Estate but which will pass or will have passed to my said wife, by operation of law or in any other manner, and assets of my estate equal in value (as finally determined for Federal estate tax purposes) to such resulting net sum I give, devise and bequeath unto [the named Trustee], as Trustee and its successor in trust, to be held in trust for the uses and purposes hereinafter set forth, such trust to be known as the LALLAH R. PIERPONT TRUST. The Trustee shall collect the income, rents and profits from this Trust and after the payment of all taxes thereon and all expenses and charges incident to the management thereof, shall, accounting from the date of my death, pay over and distribute the net income and principal thereof in the following manner:

> "(a) The Trustee shall pay to my said wife, in quarter-annual installments, all of the income during the remainder of her lifetime.

> \*   \*   \*   \*   \*   \*

> "(e) Upon the death of my said wife the entire remaining principal of the LALLAH R. PIERPONT TRUST, or such portion thereof as may be validly appointed shall be paid over free of this Trust in such manner and proportions as my said wife may designate and appoint in her Last Will and Testament. The power of appointment herein granted to my said wife shall be exercisable by her alone and in all events. To the extent that my said wife does not exercise a valid power of appointment in accordance with the power herein granted, that portion or all, as the case may be, of the principal of the LALLAH R. PIERPONT TRUST over which my said wife has failed to exercise a valid power of appointment shall be distributed absolutely to the Trustee of the residuary Trust created by Item Seventh of this Will, to be retained in trust and/or distributed in the same manner and under the same conditions as though such additions had been a part of the original principal of such residuary trust."

Upon Pierpont's death in 1956, the executors of his estate filed a federal estate tax return with the District Director, claiming as a marital deduction the value of the Lallah R. Pierpont Trust. The Commissioner disallowed the deduction, and in apt time, the estate filed a petition for review in the Tax Court. Thereafter, the widow, the trustee, and

the executors instituted an action for declaratory judgment in the Circuit Court of Baltimore City, petitioning that the court uphold Lallah's right to appoint by her will the corpus of the trust "to her estate." Joined as respondents were Pierpont's son, his daughter-in-law, their children and descendants, and a Masonic fraternal organization, the alternative beneficiaries of a residuary trust under Item Seventh which was to receive the unappointed corpus of the Lallah R. Pierpont Trust. Any increase in the federal estate tax, resulting from a disallowance of the marital deduction would, *ipso facto*, decrease the corpus of the residuary trust, since the will under Item Third directed payment of estate and inheritance taxes from the residue.

All named respondents were duly summoned. Whether for tax considerations or some other, neither William nor his wife filed an answer to the petition and neither appeared individually nor by representative. The court appointed a guardian *ad litem* for William's children and descendants and the guardian, without admitting or denying the allegations of the complaint, by way of answer submitted his wards' rights for determination by the court. This answer was drafted by petitioners' counsel, who now represents the estate in the present controversy. The Masonic fraternal organization filed an answer agreeing that the court could grant the relief prayed for in the petition.

The Circuit Court of Baltimore City passed a decree *pro confesso* against the respondents named in the complaint and referred the matter to an examiner-master. After a hearing, which consisted in its entirety of the testimony of an officer of the Trust Company, the examiner-master filed his report and it was signed by the court. The report incorporated verbatim a memorandum of law submitted by petitioners' counsel [1], including the last paragraph reading as follows:

> "Accordingly, it is respectfully submitted that a decree should be entered determining that under a proper construction of the Last Will and Testament of the Decedent the Petitioner, Lallah R. Pierpont, has the power to appoint all or any part of the corpus of the trust estate to her estate."

No appeal was taken from the decree.

On review of the Commissioner's deficiency determination by the Tax Court, that court held the decree not binding as to extent of Lallah's power of appointment because "the proceeding was non-adversary and because [the] petition therein, upon which the decree was based, was admittedly uncontested and the only apparent purpose thereof was to obtain a tax advantage. In effect, the decree was a consent decree, and does not settle the instant question for Federal tax purposes." The court then made an independent survey of the applicable Maryland law and concluded that "a donee of a granted power of appointment does not have the right to appoint to his estate unless the donor has, by express

---

[1]. The examiner-master before the Tax Court testified as follows:

"Q. Did you do anything more than adopt the-verbatim-the memorandum of law filed in the proceeding by the petitioner * * *?

"A. With the exception of the preface, which is the beginning * * * I adopted the memorandum which was submitted to me, and which I asked for, verbatim, word for word, with the exception of the first page. Every word is Mr. McDaniels'. Does that answer that?

"Q. * * * In preparing this report, did you look at any of these cases? Connor v. O'Hara?

"A. No.

"Q. Lamkin v. Safe Deposit and Trust Company?

"A. No, and not Burnet.

"Q. Balls v. Dampman?

"A. No, I didn't.

"Q. Nor Leser v. Burnet?

"A. No, I didn't.

"Q. What about the Allen case?

"A. I know about the Allen case now.

"Q At the time you prepared—

"A. I didn't." Record, pp. 67–68.

language to that effect, authorized him to do so." The court, therefore, upheld the Commissioner's determination of a deficiency.

The estate attacks both major premises of the Tax Court decision, contending that the Tax Court was conclusively bound by the decree of the Circuit Court of Baltimore City that Lallah had the power to appoint to her estate. It further contends that even if the Tax Court was not so bound, it erred in its independent determination that under Maryland law Lallah was unable to appoint to her estate. We are convinced that the Tax Court was correct on both points.

■ We recognize that we are bound by the law of Maryland in determining whether or not Lallah had those incidents of dominion over the corpus of the trust enumerated in the Int.Rev.Code of 1954, § 2056(b) (5), that would qualify the estate to take a marital deduction. As stated by the Supreme Court in Morgan v. Commissioner, 309 U.S. 78, 80, 60 S.Ct. 424, 426, 84 L.Ed. 585 (1940):

"State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed."

See Aquilino v. United States, 363 U.S. 509, 513, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960); Helvering v. Stuart, 317 U.S. 154, 161–62, 63 S.Ct. 140, 87 L.Ed. 154 (1942); Uterhart v. United States, 240 U.S. 598, 603, 36 S.Ct. 417, 60 L.Ed. 819 (1916).

■■ The law of a state, under Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), is what the judges of the appellate courts, in their collective wisdom, say it is. The same may not be said where the law of a state has been determined and applied by a *nisi prius* court, for its decisions, unlike those rendered by reviewing courts, do not lay down principles of law that must be followed as binding precedents. King v. Order of United Commercial Travelers of America, 333 U.S. 153, 68 S.Ct. 488, 92 L.Ed. 608 (1948). Nonetheless, the Supreme Court has declared that such deci-

sions, having settled property rights and interests between parties, must be followed by the federal courts in determining resultant tax liabilities—provided certain ground rules are followed. In essence those ground rules provide that the state court proceedings must not have been collusive—"collusive in the sense that all the parties joined in a submission of the issues and sought a decision which would adversely affect the Government's right to additional * * * tax." Freuler v. Helvering, 291 U.S. 35, 45, 54 S.Ct. 308, 312, 78 L.Ed. 634 (1934). In view of the circumstances of this case—the nonadversary character of the proceedings before the *nisi prius* court, the failure of the court appointed examiner-master to make an independent inquiry of the Maryland law, and the failure of the court to do any more than rubber stamp the examiner-master's report—we find the decree of the Circuit Court of Baltimore City to have been collusive as that term is employed in Freuler. While the Third Circuit reads Freuler somewhat differently and apparently requires improper conduct to render proceedings in a *nisi prius* court collusive, Gallagher v. Smith, 223 F.2d 218 (3 Cir. 1955), we feel our decision is in line with the better reasoned cases of other circuits. See, e. g., the recent cases of Estate of Peyton v. Commissioner, 323 F.2d 438 (8 Cir. 1963), and Estate of Faulkerson v. United States, 301 F.2d 231 (7 Cir.), cert. denied, 371 U.S. 887, 83 S.Ct. 182, 9 L.Ed. 2d 121 (1962). Not to the contrary is our decision of Pitts v. Hamrick, 228 F. 2d 486, 490 (4 Cir. 1955), where the decision of a South Carolina *nisi prius* court was accepted "as evidencing the law of the state * * *" in a situation where there was "no showing that it was entered into as a result of fraud or in a non adversary proceeding." Counsel for the estate lay particular stress on Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465 (1937), where the Supreme Court accepted as binding an Illinois intermediate appellate court decision as to the validity of income assignments under Illinois law. Our holding today is not at

odds with that case for two reasons. First of all the appellate court, Blair v. Linn, 274 Ill.App. 23, had "reviewed the decisions of the Supreme Court of the state and [had] reached a deliberate conclusion." Second, the appellate court decision, unlike the decree of the Circuit Court of Baltimore City, had the effect of *stare decisis*.

The question remains, however, did the Tax Court, after properly declining to treat the decree of the Circuit Court of Baltimore City as dispositive of the property rights involved, correctly interpret the applicable Maryland law in determining that Lallah could not appoint to her estate? Again, we must conclude that it did. Its decision was in accord with our own decision in Leser v. Burnet, 46 F.2d 756 (4 Cir. 1931). At issue there was whether property passing under execution of a power of appointment to "such person or persons as [the decedent] by her last will and testament * * * shall have named" was to be considered as property passing under a general or special power for purposes of the Internal Revenue Act of 1921. If it passed under a general power, the property was taxable to decedent's estate; if under a special power it was not. We reviewed the Maryland cases and concluded that the property passed under a special power and incurred no tax liability. This was true because under our interpretation of the Maryland decisions these words did not vest in the decedent the power to appoint to her estate and, therefore, an otherwise general power of appointment was under Maryland law to be deemed a special power for purposes of assessing tax liability. Subsequently the Tax Court, sitting *en banc*, reached the same conclusion in a case involving the exact issue presented today. Estate of William C. Allen, 29 T.C. 465 (1957). The estate argues, however, that both decisions were incorrect, that they incorrectly relied on *dicta* in various Maryland Court of Appeals cases, and that they ignored the only case directly in point, Wyeth v. Safe Deposit & Trust Co. of Baltimore, 176 Md. 369, 4 A.2d 753 (1939).

We concede that the crucial question of whether an unlimited testamentary power of appointment gives the holder power to appoint to his estate has never been directly passed on by the Maryland Court of Appeals in a factual setting similar to this case. Nevertheless, the question has been discussed in numerous decisions and, except in one circumstance, the invariable conclusion has been that it does not. In Balls v. Dampman, 69 Md. 390, 16 A. 16, 1 L.R.A. 545 (1888), the creditor of a decedent possessed of a similarly worded power sought to have real property of the donee's estate subject to that power sold in satisfaction of the debt. The lower court denied that relief and the Court of Appeals affirmed, holding that the decedent had evinced no intention in her will to appoint the property in satisfaction of the debt. The court went on to point out:

"There is another and an equally serious difficulty across the appellant's path. Mrs. Balls had, under her husband's will, only the power to appoint—that is, to name by will— the person or persons to whom the property should go; and she had no authority to devise it for the payment of her debts,—that is, to encumber or consume it altogether, for her own use. The construction insisted on would, if adopted, practically convert her from a mere life-tenant into an owner of the fee. She had no right to bind this property for the payment of her debts, or to fasten those debts upon it; and, had such an intention on her part been expressly stated in her will, it could not have been given effect, because not within the scope of her power of appointment. Much less, then, can such a result be constructively and inferentially reached. It is manifest, therefore, that this first clause cannot, upon any principle, be given the effect contended for." 16 A. at 18.

The basic reasoning of the court that the holder of a so-called general power of appointment, absent specific enabling language, may not divert property subject to the power to his own use has been reaffirmed in subsequent cases, although in none was the point required for decision. See Lamkin v. Safe Deposit & Trust Co. of Baltimore, 192 Md. 472, 64 A.2d 704 (1949); Connor v. O'Hara, 188 Md. 527, 53 A.2d 33 (1947); Mercantile Trust Co. v. Bergdorf & Goodman Co., 167 Md. 158, 173 A. 31, 93 A.L.R. 1205 (1934); Pope v. Safe Deposit & Trust Co. of Baltimore, 163 Md. 239, 161 A. 404 (1932); Prince de Bearn v. Winans, 111 Md. 434, 74 A. 626 (1909); Price v. Cherbonnier, 103 Md. 107, 63 A. 209 (1906). There has been a retreat from this doctrine where the donor and donee are one and the same person. Wyeth v. Safe Deposit & Trust Co. of Baltimore, 176 Md. 369, 4 A.2d 753 (1939). This holding was contrary to the language contained in Mercantile Trust Co. v. Bergdorf & Goodman Co., supra, and Pope v. Safe Deposit & Trust Co. of Baltimore, supra, but upon reflection, it will be seen that it was not at odds with the basic rationale of Balls v. Dampman, supra. As the court pointed out:

"[T]he donor and the donee of the power being the same person, the intention of one is of necessity the intention of the other. * * * [T]he rule excluding one's creditors from appointment was apparently adopted to prevent frustration of the donor's intent * * *." 4 A.2d at 756.

Balls v. Dampman, supra, has been cited and approved in cases subsequent to Wyeth and must be deemed still viable. Lamkin v. Safe Deposit & Trust Co. of Baltimore, supra, and Connor v. O'Hara, supra. We must conclude, therefore, that Leser v. Burnet, 46 F.2d 756 (4 Cir. 1931), is not at variance with the way the Maryland Court of Appeals would decide the issue were it called upon for a specific holding [2] and is controlling on the question we face here.

Finally, we consider the estate's argument that by our holding today we frustrate Pierpont's clearly established dispositive intent. That he had an intention to take advantage of the marital deduction is doubtlessly clear; that he entertained the intention to give his widow the power to appoint to her estate is, at best, disputable. But even if Pierpont intended that Lallah might appoint to her estate, he failed to employ the necessary language which would have enabled her to do so under Maryland law. As recently observed by the Supreme Court: "The achievement of the purposes of the marital deduction is dependent to a great degree upon the careful drafting of wills." Jackson v. United States, 376 U.S. 503, 84 S.Ct. 869, 11 L.Ed.2d 871 (1964). Maryland courts have fashioned a rather strange animal of the general power of appointment where the donor and donee are separate entities and where the donee has not been given the specific power to appoint to his own use. While calling this power a general power of appointment, it is a creature apart from the general power of appointment found in the other states. Nonetheless, entertaining proper respect for the law of Maryland as announced by its highest court, we must conclude, with that court, that "Whether or not this is the kind of will which [decedent] ought to have made, we are not at liberty to rewrite it for him

**2.** The court was not required to pass on the validity of Leser v. Burnet, 46 F.2d 756 (4 Cir. 1931), in Connor v. O'Hara, 188 Md. 527, 53 A.2d 33 (1947), and so indicated. The court, earlier in the same opinion, however, had stated that: "Decisions or dicta of this court indicate that a donee has no power (unless expressly conferred) to appoint in payment of his own debts." 53 A.2d at 34–35. Leser v. Burnet, supra, has been considered as representing a valid expression of Maryland law by the consensus of commentators. See, e. g., Moser, Some Aspects of Powers of Appointment in Maryland, 12 Md.L.Rev. 13 (1951); Gold, The Classification of Some Powers of Appointment, 40 Mich.L.Rev. 337 (1942); Gump, The Meaning of the "General" Power of Appointment under Federal Estate Tax, 1 Md.L.Rev. 300 (1937).

or to determine what he ought to have done." Gaither v. Fidelity-Baltimore Nat'l Bank & Trust Co., 208 Md. 8, 115 A.2d 711, 713 (1955).[3]

The decision of the Tax Court is therefore

Affirmed.

ALBERT V. BRYAN, Circuit Judge (dissenting):

Actually, denial of the marital exemption by the Tax Court—and the tax assessment of $31,697.63—rests upon the mere omission of the word "estate" from the clauses in the will creating the power of appointment. Neither the tax statute nor the Maryland decisions are so exacting in their requirements of a power to appoint to the donee's estate. No more is demanded than that the right be expressed. In my judgment the will contains the requisite expression.

The just and scrupulously objective statement of the facts in the opinion of the Court demonstrates the point of my disagreement. In forceful articulation the will—even down to plagiarizing the very phraseology of the Tax Code—manifests that the pertinent marital deduction provisions of the statute were adopted, embraced and incorporated in their entirety. Obviously this includes a power of appointment, such as is contemplated by the statute, with every requisite element. The possible beneficiaries are unlimited—thus necessarily including the donee's estate—by the will's directions that the trust principal be paid over "in such manner and proportions as my wife *may* designate and appoint". A more encompassing choice of appointees is not easily phrased. To say that, nevertheless, the testament's power fails to comply—because it did not refer to "estate" eo nomine—is for me a captious and pharisaical reading of the ultimate bequest or devise.

Besides, the decision of the Circuit Court of Baltimore City was not collusive in the sense that it was ex parte or by consent. It was non-adversary, but only so because the testator's son and daughter-in-law, both defendants, did not oppose the executor's construction, although a contrary determination would have advantaged them. Their failure to advance their position ought not to convert the suit into a "no-contest". Hence under Freuler v. Helvering, 291 U.S. 35, 45, 54 S.Ct. 308, 78 L.Ed. 634 (1934), the interpretation of the State court bound the Tax Court.

But in my judgment neither this decree nor the testimony dehors the will emphasizing the testator's aim need be considered. The testament itself plainly provides the donee power to name her estate as appointee. The Court of Appeals of Maryland, as the majority now fully points out, has several times passed upon the scope to be accorded a power of appointment. Never, however, has it excluded the estate of the donee as a potential nominee when the organic document clearly permits the estate to be a beneficiary.

In my view the Tax Court has been overcritical and puristic in collection of the sovereign's death tallage. I would reverse.

3. As put by Professor Simes:

"What are the outside limits of construction? If the court can give a meaning to a testator's will which he never thought of, what is to prevent the court from writing a new will for him? Where should the court stop? Without doubt, there are very definite limits to the process of judicial construction. Generally, courts give lip service to the proposition that they cannot make a will for the testator. And while, of course, they are in fact doing precisely what they profess not to do, when they follow the process of construction herein outlined, they are restrained in that process by the necessity of finding the construction from the language of the instrument itself. The court will not add a page, or even a paragraph, to the will under the guise of construction. The fiction that the construction comes from the words of the testator in the will must be preserved." Simes, Future Interests, § 78 (1951).