Peter M. DUCA, Administrator of the
Estate of Maurice Duca,

v.

UNITED STATES of America.
Civ. No. 14480.

United States District Court
D. Maryland.

Dec. 31, 1964.

Sheldon H. Braiterman, Baltimore,
Md., for plaintiff.

Moshe Schuldinger and Allen L.
Schwait, Attys., Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst.
Atty. Gen., C. Moxley Featherston and
David A. Wilson, Jr., Attys., Dept. of
Justice, Washington, D. C., and Thomas
J. Kenney, U. S. Atty., and Robert W.
Kernan, Asst. U. S. Atty., Baltimore,
Md., on brief), for respondent.

THOMSEN, Chief Judge.

This is an action to recover federal
estate taxes alleged to have been errone-

ously assessed and paid. Only one point is presented to the Court for decision at this time, namely, whether a $20,000 item, representing the value of a house on Taylor Avenue, was properly included in Schedule M as qualifying for the marital deduction.

### Facts

Maurice Duca died on September 1, 1956, survived by his second wife, Rose, and Peter, a son by his first wife. He left a poorly drawn will, dated November 26, 1938, which contained the following provisions:

> "First. I give, devise and bequeath, unto my Wife, Rose Duca, she being my second Wife, an One-third (⅓rd.) Interest, with Power to sell and encumber during her lifetime, and after her death, unto my Son, Peitro Duca, and unto my Son, Peitro Duca, an Two-thirds (⅔rds.) interest in all of my Real Property, of which I am seized in Fee-simple, and in all of my Leasehold Property, that I own at the time of my death."

The testator also left his business, the Parkville Granite and Marble Works, along with his jewelry and other personal effects to his son and his household goods, etc. to his wife. There was no residuary clause in the will. The executor appointed under the will refused to serve, so the son was appointed administrator c.t.a.

The gross estate amounted to $181,984.54. It included, beside the business, some real property, some leasehold property and other personal property. The son was advised with respect to his duties as administrator by a lawyer and an accountant.

■ Under Maryland law, a widow may renounce her husband's will and elect to take her dower or her one-third statutory interest, Anno. Code of Md., 1957 ed., Art. 93, sec. 329, see also Art. 46, sec. 3, provided such election is made within one month after the notice to creditors expires. Ibid, Art. 93, secs. 329, 330. That period expired on May 7, 1957. The Court finds that the widow was not advised of her statutory rights, although the attorney undertook to act for her as well as for her stepson.

On December 24, 1957, the attorney presented to the Orphans' Court of Baltimore County a petition signed by the widow and by the son individually and as administrator c.t.a., as well as by the attorney. The petition recited, inter alia, that a question had arisen with respect to the interpretation of Article First of the will, quoted above, as to "whether the testator's wife was entitled to an absolute interest in one-third (⅓) of the real estate left by the testator, or only entitled to receive a life estate in one-third (⅓) of the decedent's real estate." The petition continued: "That it is the belief of Rose Duca that it was the intention and desire of her late husband, Maurice Duca, deceased, that she receive a life estate only in and to one-third (⅓) of the decedent's real estate, and the said Rose Duca desires that such intention be formalized by an appropriate Order of the Court herein, affixing hereto her signature which she desires to be considered her consent hereto." The petition also dealt with the distribution of certain personal property.

■ An Orphans' Court in Maryland has no jurisdiction to decide questions affecting the title to real estate. See McComas v. Wiley, 132 Md. 406, 104 A. 52 (1918); Wingert v. State, 125 Md. 536, 94 A. 166 (1915); Sykes, Maryland Practice, § 211. Nevertheless, the Orphans' Court "ORDERED * * * that Rose Duca, widow of Maurice Duca, deceased, be and she is hereby declared and decreed to be entitled to a life estate in and to one-third (⅓) of the decedent's real estate under Article First of his Will; * * *." Under the agreement and order the widow would have received less than her statutory share.

Shortly thereafter the widow became convinced that she had been cheated by her stepson and the attorney, and she consulted a lawyer of Italian extraction, who was a friend of the family, and who shortly thereafter was appointed a judge of the Orphans' Court of Baltimore City.

Acting as a mediator, he worked out a settlement of the controversy between the widow and her stepson, under which the widow would receive a distribution equivalent to her statutory rights if she had renounced the will. Pursuant to this settlement, the attorney for the estate prepared two additional petitions, which he signed as "attorney for petitioners" and which were also signed by the widow and by the son individually and as administrator c.t.a. The first petition recited that since the order of December 24, 1957, the real property inventory had been amended to include additional fee simple properties, and other inventories had been amended by reason of which, as well as a reconsideration by the parties of their proper rights, they prayed that the order of December 27, 1957, be declared void and of no effect, nunc pro tunc. It was so ordered on August 27, 1958.

The second petition recited, inter alia: "4. That the parties hereto represent that their respective interests under the law are as follows, namely, that Rose Duca, widow of Maurice Duca, deceased, is entitled to an absolute one-third (⅓) interest in and to all of the fee simple and leasehold real estate left by Maurice Duca, deceased, with her right to sell or encumber the same absolutely, and that the balance thereof, namely, a two-thirds (⅔) interest in and to the said fee simple and leasehold real estate of the decedent, be declared and decreed to belong absolutely unto Peter M. Duca, son of the decedent, with his right to sell or encumber the same absolutely." It also dealt with various items of leasehold and other personal property. On the petition, affidavit and consents, the Orphans' Court

"ORDERED AND DECREED that Rose Duca, widow of Maurice Duca, deceased, be and she is hereby declared to be the absolute owner of a one-third (⅓) interest and estate in and to all of the decedent's real estate, as well as in and to an absolute one-third (⅓) interest in and to a certain leasehold estate covering property No. 1120 North Lakewood Avenue, Baltimore City, Maryland; and it is further ORDERED AND DECREED that the said Rose Duca and Peter M. Duca are each vested with an absolute one-half (½) individual interest in and to all of the jointly owned property shown on the joint property inventory filed in this proceeding; and it is further ORDERED AND DECREED that in order to aid in making the liquid position of Rose Duca more feasible economically, and in lieu of partitioning, that the said Peter M. Duca, Administrator C.T.A. of the Estate of Maurice Duca, deceased, be and he is hereby authorized and empowered to convey all of the properties hereinbefore referred to unto a straw man, which said straw man shall then immediately transfer by Deed the property No. 2108 Taylor Avenue, Baltimore County, Maryland, unto Rose Duca absolutely, as and for, and in lieu of, her one-third (⅓) interest decreed hereinabove, and the said straw man also then to immediately convey the balance of said fee simple leasehold property unto the said Peter M. Duca absolutely; and it is further ORDERED AND DECREED that with respect to the other personal property of the decedent which is not disposed of as above, the same be and the same is hereby to be distributed as follows:

"Unto Rose Duca, one-third (⅓) absolutely;

"Unto Peter M. Duca, two-thirds (⅔) absolutely."

Pursuant to the order, the Taylor Avenue property was transferred to the widow. It is not disputed that it was worth $20,000, and that amount was included in the Federal Estate Tax Return filed in November, 1958, in Schedule A, Real Estate, and in Schedule M, among the items claimed to constitute the allowable marital deduction. Appropriate actions have been taken by the administrator and by the government to present for

decision the propriety of the inclusion of the $20,000 item in Schedule M.

Taxpayer contends that the $20,000 item was properly included in the marital deduction on either of the following grounds:

(A) That Article First of the will should be construed as giving the widow a life estate with a power of appointment which meets the tests of sec. 2056(b) (5), IRC of 1954, and of sec. 20.2056(b)–5(a), Treas.Reg. (1954); or

(B) That the settlement of the controversy between the widow and her stepson, approved by the Orphans' Court, pursuant to which the Taylor Avenue property was transferred to the widow, was a bona fide recognition of enforceable rights of the surviving spouse in the decedent's estate, whether or not it was made pursuant to a valid order of the Orphans' Court, and that the full fee simple interest in the Taylor Avenue property should be regarded as having "passed from the decedent to his surviving spouse," within the meaning of sec. 2056(a) of the Code.

### Discussion

■ (A) Article First of the will does not give the widow a power of appointment which meets the tests of sec. 2056(b) (5) of the Code and sec. 20.2056 (b) (5) of the Regulations. Estate of Pierpont v. C. I. R., 4 Cir., 336 F.2d 277 (1964), and cases cited therein.

■ Nor is there merit in the contention, tentatively suggested by counsel for taxpayer at the oral argument, that Article First of the will should be construed to give the widow an absolute fee simple interest in one-third of the real estate, because of her power to sell and encumber. The provisions of Article First could be clearer, but whatever the law may be elsewhere, see Page on Wills, Par. 45.10, under Maryland law the widow was not entitled to sell and encumber the property for her own purposes in complete disregard of the rights of the remainderman. Gaver v. Gaver, 176 Md. 171, 183, 4 A.2d 132 (1939); Meister v. Meister, 121 Md. 440, 443, 88 A. 235 (1913); McClernan v. McClernan, 73 Md. 283, 20 A. 908 (1890); Miller, Construction of Wills, sec. 253, fn. 7, 8.

(B) To qualify for the marital deduction under sec. 2056(a), the property must have "passed from the decedent to his surviving spouse". The applicable Regulation, sec. 20.2056(e)–2(d) (2) provides:

"If as a result of the controversy involving the decedent's will, or involving any bequest or devise thereunder, a property interest is assigned or surrendered to the surviving spouse, the interest so acquired will be regarded as having 'passed from the decedent to his surviving spouse' only if the assignment or surrender was a bona fide recognition of enforceable rights of the surviving spouse in the decedent's estate. * * *"

Such recognition is not limited to cases where its assignment is made pursuant to a decision of a local court upon the merits in an adversary proceeding.

If the widow had renounced the will and taken her thirds, or the equivalent thereof, there would have been no question about the marital deduction. The property would clearly have passed from the decedent to her under sec. 2056 of the Code. This Court has found that the widow was not advised of her right to renounce by the attorney who acted for her as well as for her stepson, or by anyone else, until after the statutory period for renunciation had expired. Although the Maryland Courts have generally held that the statute must be strictly construed and that a timely renunciation is necessary, Barrett v. Clark, 189 Md. 116, 54 A.2d 128, 173 A.L.R. 988 (1947), in the analogous case of a creditor who failed to file a timely claim against an estate because of misrepresentations made to her, the Court of Appeals of Maryland followed the liberal rule applied by the Fourth Circuit in Scarborough v. Atlantic Coast Line R. Co., 178 F.2d 253, 15 A.L.R.2d 491 (1949), and held that the

statute of limitations did not bar the suit. Chandlee v. Shockley, 219 Md. 493, 150 A.2d 438 (1959). In view of that decision and the thoughtful dissent of Chief Judge Marbury in Barrett v. Clark, supra, this Court believes that under the circumstances shown by the evidence herein the Maryland Courts would permit a widow to obtain her thirds, or the equivalent thereof, in an equity court if not in the Orphans' Court.

The settlement agreement worked out by the mediator, embodied in the petitions filed in the Orphans' Court, stated: "That the parties hereto represent that their respective interests *under the law* are as follows * * *" (emphasis supplied). The Orphans' Court approved the settlement.

All concerned appear to have ignored the fact that an Orphans' Court in Maryland has no jurisdiction to decide questions of title to real estate. McComas v. Wiley, supra; Wingert v. State, supra; Sykes, Maryland Practice, § 211. But the settlement was a bona fide settlement of an existing controversy and a bona fide recognition of enforceable rights of the surviving spouse in the decedent's estate. It is true that the transfer of the full fee simple interest in the Taylor Avenue property cannot be said to have been made "pursuant to a decision of a local court upon the merits in an adversary proceeding". See sec. 20.2056(e)–2(d) (2) of the Regulations and Estate of Pierpont v. C. I. R., supra. But it was a settlement approved by the Orphans' Court, following a genuine controversy involving the decedent's will and the widow's legal rights in his estate. The settlement was not made and the Court order was not obtained collusively in order to affect adversely the government's right to additional tax. Cf. Estate of Pierpont v. C. I. R., supra, 336 F.2d at p. 281; Freuler v. Helvering, 291 U.S. 35, 45, 54 S.Ct. 308, 78 L.Ed. 634 (1934). The settlement gave the widow substantially what she would have been entitled to if she had sought and been allowed to renounce the will belatedly because of the failure of her stepson and of the attorney representing her as well as her stepson and the estate to fulfill their fiduciary duty of explanation to her.

■ The Court concludes that the transfer of the Taylor°Avenue property to the widow pursuant to the settlement should be regarded as having "passed from the decedent to his surviving spouse", within the meaning of the statute and the Regulation, and that the value of the property was properly included as a marital deduction in Schedule M.