**Thomas H. WILLCOX, Jr., and R. B. Spindle, III, Successor Executors d. b. n. of the Estate of Buena Vista Cromwell, deceased, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 4285.**

United States District Court
E. D. Virginia,
Norfolk Division.

Aug. 30, 1965.

Thomas H. Willcox, Jr., Richard B. Spindle, III, of Willcox, Cooke, Savage & Lawrence, Norfolk, Va., for plaintiffs.

C. V. Spratley, Jr., U. S. Atty., Norfolk, Va., Myron C. Baum, U. S. Dept. of Justice, Washington, D. C., for defendant.

WALTER E. HOFFMAN, Chief Judge.

This controversy, involving a claim for refund of estate taxes paid, is before the Court upon an agreed statement of facts and certain exhibits introduced in evidence.

Buena Vista Cromwell died on December 15, 1957, and her last will and testament was admitted to probate in the Clerk's Office of the Corporation Court of the City of Norfolk, Virginia, on December 20, 1958, at which time Thomas H. Willcox qualified as executor. Upon the death of the executor named in the will, the plaintiffs were appointed as suc-

cessor executors d. b. n. on August 25, 1959. All of the various administrative and jurisdictional requirements for maintaining this action have been fulfilled. The plaintiffs' claim for refund of estate taxes paid was denied by letter dated July 14, 1961.

On October 17, 1962, Benton L. Cromwell, represented by the law firm of Willcox, Cooke, Savage and Lawrence, filed a petition for a declaratory judgment in the Circuit Court of the City of Norfolk praying for a construction of the will of Buena Vista Cromwell. Benton L. Cromwell was the husband of Buena Vista Cromwell during her lifetime. John G. Cromwell was named as the only party respondent, he being the son of the marriage between Benton L. Cromwell and Buena Vista Cromwell. The son, John G. Cromwell, was bequeathed one-half of the estate of Buena Vista Cromwell under Article Two of the will absolutely and in fee simple. Under Article Three of the will Buena Vista Cromwell bequeathed the remaining one-half of her estate to her husband, Benton L. Cromwell, in the following language:

"For and during his natural life, with the remainder to my son, John G. Cromwell. In addition to a life estate in said remaining one-half of my estate, I expressly authorize my said husband to appropriate to his own use all or any part thereof which he may deem desirable for his comfort, maintenance and well being, and to dispose of the same by his sole act and deed without the consent of the remainderman. Should my said husband exercise this privilege, then I expressly give, devise and bequeath unto my said son what may remain at the time of the death of my said husband."

In the state court action Benton L. Cromwell contended that he was vested with a legal life estate with (1) an unlimited power to consume the corpus, (2) an unlimited power of disposition of the corpus, and (3) an unlimited right to consume or use for his own benefit the proceeds of such disposition.

On December 10, 1962, the son, John G. Cromwell, filed a response through his attorneys, Kellam and Kellam. He contended that Benton L. Cromwell had no more than a mere life estate, with the remainder to John G. Cromwell, but with the limited right on the part of Benton L. Cromwell to use such sums as were necessary for his comfort, maintenance and well being.

Briefs were filed by counsel for both parties in the state court proceeding, and are here a part of the record. After due consideration to the problem presented, the state court found that the controversy involved an actual antagonistic assertion and denial of right and further said:

"And it appearing further to the court that it was the intention of the Testatrix by providing that her husband may appropriate to his own use all or any part of the corpus which he may deem desirable for his comfort, maintenance and well-being, to express her motivation, purpose or reason for such provision and not to limit her husband's use thereof by such standard, it is hereby

"ADJUDGED, ORDERED and DECREED that Article Three of the Will of Buena Vista Cromwell bequeaths and devises unto Benton L. Cromwell a legal life estate with an unlimited power vested in Benton L. Cromwell alone to use or consume the corpus thereof and an unlimited power vested in Benton L. Cromwell alone to dispose of the corpus thereof to any person by inter vivos conveyance by his sole act and deed without the consent of the remainderman, both of which powers are exercisable in the sole discretion of Benton L. Cromwell without limitation of need, purpose or amount;

"And that Article Three of said Will further bequeaths and devises unto John G. Cromwell a vested remainder, subject to the aforesaid life estate and general powers of appointment in the life tenant, sub-

ject to be divested only by the exercise of either of such powers and only to the extent of the exercise thereof."

The final decree in the state court was endorsed "Seen and Objected To" by counsel for John G. Cromwell, but no appeal was ever taken to the Supreme Court of Appeals of Virginia. The decree has long since become final.

The federal estate tax return, filed within the time prescribed by law, claimed the marital deduction benefits. This was disallowed by the District Director of Internal Revenue and, on January 15, 1961 (prior to the institution of the declaratory judgment action in the state court), the plaintiffs paid the deficiency assessment and interest. If the marital deduction provision is upheld, either by reason of the state court adjudication or under Virginia law, the plaintiffs are entitled to judgment in this action. Defendant concedes that the state court action was a bona fide adversary proceeding, with no fraud or collusion involved, but insists that the state court decree is not binding upon the defendant as it is contrary to the law of Virginia.

The legal effect of a state court decree construing a will so as to create a general power of appointment (and thus qualifying for marital deduction tax benefits) has been before this Court in the unreported case of National Bank of Commerce of Norfolk, Executor and Trustee under the Will of Berkley Walter Shelton, Jr. v. The United States of America, Civil Action No. 2381, decided April 16, 1958. In that case the attorney who prepared the will inadvertently failed to include language providing for a general power of appointment, although it was conceded that the attorney and testator had discussed the same and intended to take advantage of the tax benefits. Subsequently the testator visited the attorney's office without an appointment and while the attorney was not there. Finding that the draft had been typed, he proceeded to sign same and delivered it to his corporate executor. When the bank discovered the omission of the power of appointment, it referred the matter to the drafting attorney who proceeded to prepare a new will including the general power of appointment. Before the new will could be executed, the testator died. The state court, in proceeding found to be adversary in nature filed by the widow against her daughter, decreed that the portion of the will in controversy should be construed so as to give the widow the income from the trust, with the remainder over in fee simple which power she could exercise by withdrawing the principal during her lifetime, or by disposing of same under her will by exercising the power of appointment. In the federal estate tax refund case, this Court decided for the plaintiff holding, in effect, that the federal court was bound to give conclusive effect to the state court decree in determining federal estate tax liability in the absence of fraud, collusion, or evidence clearly establishing that the state court proceeding was non-adversary in nature. The United States did not appeal.

We see no necessity to alter the principles previously stated which, in the main, are grounded upon Pitts v. Hamrick, 4 Cir., 228 F.2d 486. Since this matter was argued, the Circuit Court of Appeals has decided Pierpont's Estate v. C. I. R., 4 Cir., 336 F.2d 277, cert. den. 380 U.S. 908, 85 S.Ct. 890, 13 L.Ed.2d 795. In Pierpont, the state court declaratory judgment action resulted in a decree *pro confesso* in a non-adversary proceeding. The Tax Court declared the state court decree not binding as to the power of appointment because the proceeding was non-adversary, with the petition admittedly uncontested and the only apparent purpose being to obtain a tax advantage. Judge Bell's opinion in the Court of Appeals points out that the Tax Court properly declined "to treat the decree of the Circuit Court of Baltimore City as dispositive of the property rights involved" and thereafter proceeded to uphold the Tax Court in its determination of the applicable Maryland law which was contrary to the interpretation made by the Baltimore City Circuit

Court. But Judge Bell did not attempt to interpret the Maryland law until he had reached agreement with the Tax Court that the state court determination was not binding for the reasons stated above. As he so aptly pointed out: (1) federal courts are bound by the law of the state in determining whether a party had those incidents of dominion over the corpus that would qualify the estate to take a marital deduction; (2) state law creates legal interests and rights, whereas federal revenue acts designate what interests or rights, so created, shall be taxed, Morgan v. Commissioner, 309 U.S. 78, 60 S.Ct. 424, 84 L.Ed. 585; (3) the law of a state is what the judges of the appellate courts say it is; (4) while *nisi prius* courts do not lay down principles of law which must be followed as binding precedents, yet such decisions, having settled property rights and interests between the parties, must be followed by federal courts in determining resultant tax liability, provided certain ground rules are followed; and (5) the prior decision of the Fourth Circuit in Pitts v. Hamrick, supra, was reaffirmed as to the effect of a *nisi prius* court decision " 'as evidencing the law of the state * * *' in a situation where there was 'no showing that it was entered into as a result of fraud or in a non adversary proceeding.' "

■ While we believe that there is enough force in Pierpont to conclude that a *nisi prius* state court decision, even if deemed erroneous by a federal court, is nevertheless binding in determining tax liabilities that flow from the settlement of property rights and interests by a state court decree, we do not agree that any decision of the Supreme Court of Appeals of Virginia has clearly held contrary to the findings of the Circuit Court of the City of Norfolk. What the defendant would have the federal court do is to assume the role of super-arbiter over any state court *nisi prius* decision that may be merely questionable. Such a determination would be beyond all reason. Assuming arguendo that this Court held with the defendant, thus destroying the legal effect of the state court decree, confusion would surely reign upon the death of Benton L. Cromwell. Indeed, the federal taxing bureau could legally reverse itself and declare that the rights of the parties, as the same touches the estate of Benton L. Cromwell, were determined by the state court decree. Property rights would never be settled in such a set of circumstances. There is logic to the theory that property rights and interest may appropriately be settled by a lower court decision which is free from fraud or collusion and is determined in a bona fide adversary proceeding.

The federal taxing authority is not without remedy. The experts in the Internal Revenue Service are readily able to detect the problems likely to give rise to state court action involving interpretations of wills where the issue of marital deduction presents a substantial tax differential. Just as the state court is open to the private litigants in declaratory judgment actions, so also the federal courts are open to the federal taxing authority. Moreover, if the state court under the present state of facts had ruled in favor of the son, John G. Cromwell, we pose the query as to whether the defendant would be willing to concede that the state court decree is reviewable by the federal court in an action brought by the fiduciaries. Indeed, we doubt that such a concession would be made even if Virginia's highest court had ruled contrary to the state trial court in some other case.

As the late learned Chief Judge John J. Parker said in Pitts v. Hamrick, supra, after approving in general terms the interpretation of the law of South Carolina as made by a *nisi prius* state court (228 F.2d 490):

"Whatever be the general law of South Carolina with respect to the matter, however, the decision of the probate court, which has not been appealed from, has settled the law, so far as this estate is concerned. * * * Action of the probate court, even if erroneous, is valid unless re-

versed. Anderson v. Bowers, 4 Cir., 170 F.2d 676, 678."

Substantially the same language is found in Freuler v. Helvering, 291 U.S. 35, 45, 54 S.Ct. 308, 78 L.Ed. 634.

Our Circuit Court of Appeals has had other occasions to recognize the impact of a state trial court decision where the highest court of the state has not spoken on the subject. Maryland Casualty Company v. Burley, 4 Cir., 345 F.2d 138.

We are urged to modify the ruling in the Shelton case by reason of several decisions from other circuits since this court's 1958 opinion. The defendant cites Faulkerson's Estate v. United States, 7 Cir., 301 F.2d 231, cert. den. 371 U.S. 887, 83 S.Ct. 182, 9 L.Ed.2d 121, and Peyton's Estate v. C. I. R., 8 Cir., 323 F.2d 438. In Faulkerson, the state court proceeding was *ex parte,* without notice to anyone, without appearances, without a hearing on the merits, and without reference to other provisions in the will giving the remainder to testator's children. In Peyton, the handling of the case was in a non-adversary atmosphere which was tantamount to collusion. Each of these cases is considered in Pierpont, but we invariably return to the point of whether the state court proceeding was non-adversary. Stated otherwise, was the matter fully and fairly presented to the state court on the basis of adverse interests involving substantial property rights, with the parties represented by competent counsel asserting the rights of their respective clients? When we examine the briefs submitted in the state court, we note that they enter into a thorough discussion of Virginia law; they make no mention of the federal estate tax consequences. While this may have been apparent to the state court, it falls far short of intimating that the primary purpose of the state action was the avoidance of federal estate taxes.

This opinion could be unduly prolonged by a discussion of Virginia law, without regard to the effect of the state court action. The question is not free from doubt. Both parties refer to many authorities. The plaintiffs direct attention to Mowery v. Coffman, 185 Va. 491, 39 S.E.2d 285, holding that the gift of property coupled with a power of disposition "for the support and maintenance" and the like, of the donee, merely expresses the motive for the gift. The defendant argues that Davis v. Kendall, 130 Va. 175, 107 S.E. 751, is controlling and does not mention Mowery v. Coffman. We deem it unnecessary to resolve a problem which should be left to the courts of Virginia. In declining to go further into Virginia law, it is not because this Court feels that the defendant is correct in its interpretation which it now urges. We think that the conclusiveness of the state court decree under the facts here presented is sufficient.

Let a judgment order be prepared and presented by the plaintiffs after first affording counsel for the defendant an opportunity to inspect and endorse the same.