## LESER v. BURNET, Commissioner of Internal Revenue.
### No. 3033.

Circuit Court of Appeals, Fourth Circuit.

Jan. 13, 1931.

Oscar Leser, of Baltimore, Md., for petitioner.

Helen R. Carloss, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., J. Louis Monarch, Sp. Asst. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Prew Savoy, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for respondent.

Before PARKER, Circuit Judge, and McCLINTIC and COLEMAN, District Judges.

PARKER, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals holding that there should be included in the gross estate of Mrs. Annie E. Agnus, for the purpose of estate taxation, property passing under two powers of appointment exercised by Mrs. Agnus in her will. One power related to property on Eutaw street in the city of Baltimore; but as it was conceded at the bar of this court that the decision of the board was correct with regard to this, we need not consider it further. The other power related to certain newspaper property which in the year 1883 was conveyed in trust by Charles Carroll Fulton, the father of Mrs. Agnus, under a provision that after paying an annuity to the widow of the grantor, the remainder of the income therefrom should be distributed among his four children. As to three of the children the deed of trust gave simple life estates with remainders over. As to the fourth child, Mrs. Agnus, it provided:

"And upon the decease of the said Anne E. Agnus, and as to one-half of the part or share or portion of said principal estate property and subject out of which her said portion or part of the rents, issues, income and annual produce arises, together with one-half of her said part or portion of the income and annual produce aforesaid, in trust for the use and behoof of such person

or persons as she, by her last will and testament or by any instrument of writing in the nature of or purporting to be a last will and testament, appropriately executed, shall have named, limited and appointed to take and have the same, which will or testament or instrument of writing she is declared competent and is hereby authorized and empowered to make and execute, whether she be sole or covert."

Mrs. Agnus died in 1922. She left a will which, after referring to the power, exercised same in favor of her two daughters. Under this exercise of the power, the daughters received property of the value of $232,461.15; and the question presented to us is whether it was proper to include this in the gross estate of Mrs. Agnus in valuing same for the purpose of computing the federal estate tax.

The Revenue Act of 1921 (section 402 (e), provides that in valuing the estate of a decedent for the purpose of determining the estate tax to be assessed against it, there shall be included in the gross estate the value of any property passing under a general power of appointment, exercised by the decedent by will or by deed executed in contemplation of death. 42 Stat. 279. The first question to be determined, therefore, is what is meant by a general power within the meaning of the act, and we think there can be no question that by a general power is meant one which may be exercised by the donee of the power in favor of any person whomsoever including the donee himself or his own creditors.

It is true that where the power is limited to be exercised by will, and the grantee cannot for that reason exercise it in favor of himself during his lifetime, it is nevertheless held to be general if he have the unrestricted right to designate the beneficiaries; for it is the right to designate the beneficiaries, and not the method provided for its execution, which determines its nature. Whitlock-Rose v. McCaughn (C. C. A. 3rd) 21 F.(2d) 164, 165; Johnson v. Cushing, 15 N. H. 298, 41 Am. Dec. 694; Greenway v. White, 196 Ky. 745, 246 S. W. 137, 32 A. L. R. 1385. But whether the power granted is to be exercised by deed or by will, the distinguishing characteristic of a general power is that the donee has unfettered control over its exercise, and may appoint in favor of his own estate or his creditors as well as in favor of others. From this characteristic has arisen the doctrine followed in England, and by most of the courts of this country, that where the donee exercises the power in favor of volunteers, i. e. in favor of persons other than his

creditors, such creditors may in equity subject the property passing under the power to the satisfaction of his debts. U. S. v. Field, 255 U. S. 257, 263, 41 S. Ct. 256, 65 L. Ed. 617, 18 A. L. R. 1461; Brandies v. Cochrane, 112 U. S. 344, 5 S. Ct. 194, 28 L. Ed. 760; Clapp v. Ingraham, 126 Mass. 200, 202; Tallmadge v. Sill, 21 Barb. (N. Y.) 34, 51; Johnson v. Cushing, supra, 15 N. H. 298, 307, 41 Am. Dec. 694; Rogers v. Hinton, 62 N. C. 101; Freeman's Adm'r v. Butters, 94 Va. 406, 26 S. E. 845; Patterson v. Lawrence, 83 Ga. 703, 708, 10 S. E. 355, 7 L. R. A. 143; Thompson v. Towne, [1694] 2 Vern. 319, 23 Eng. Reprint 806; Lassells v. Cornwallis, [1704] 2 Vern. 465, 23 Eng. Reprint 898; Townshend v. Windham, 2 Ves. Sr. 9, 28 Eng. Reprint 1; O'Grady v. Wilmot, 2 A. C. 231.

Chief Justice Gray of Massachusetts, in Clapp v. Ingraham, supra, thus discusses this characteristic of a general power and the history of the doctrine to which we have adverted:

"It was settled in the English Court of Chancery, before the middle of the last century, that where a person has a general power of appointment, either by deed or by will, and executes this power, the property appointed is deemed in equity part of his assets, and subject to the demands of his creditors in preference to the claims of his voluntary appointees or legatees. The rule perhaps had its origin in a decree of Lord Somers, affirmed by the House of Lords, in a case in which the person executing the power had in effect reserved the power to himself in granting away the estate. Thompson v. Towne [1695] Prec. Ch. 52 [24 Eng. Reprint, 26]; S. C. [1694] 2 Vern. 319 [23 Eng. Reprint, 806]. But Lord Hardwicke repeatedly applied it to cases of the execution of a general power of appointment by will of property of which the donee had never had any ownership or control during his life; and, while recognizing the logical difficulty that the power, when executed, took effect as an appointment, not of the testator's own assets, but of the estate of the donor of the power, said that the previous cases before Lord Talbot and himself (of which very meager and imperfect reports have come down to us) had established the doctrine, that when there was a general power of appointment, which it was absolutely in the donee's pleasure to execute or not, he might do it for any purpose whatever, and might appoint the money to be paid to his executors if he pleased, and, if he executed it voluntarily and without consideration, for the benefit of

third persons, the money should be considered part of his assets, and his creditors should have the benefit of it. * * * Although the soundness of the reasons on which the doctrine rests has been impugned by Chief Justice Gibson, arguendo, and doubted by Mr. Justice Story in his Commentaries, the doctrine is stated both by Judge Story and by Chancellor Kent as well settled; and it has been affirmed by the highest court of New Hampshire, in a very able judgment, delivered by Chief Justice Parker, and applied to a case in which a testator devised property in trust to pay such part of the income as the trustees should think proper to his son for life, and, after the son's death, to make over the principal, with any accumulated income, to such persons as the son should by will direct. * * * A doctrine so just and equitable in its operation, clearly established by the laws of England before our Revolution, and supported by such a weight of authority, cannot be set aside by a court of chancery, because of doubts of the technical soundness of the reasons on which it was originally established."

[redacted] It will be noted that the revenue act directs that property passing under a general power shall be included in the estate of a decedent, but not property passing under a special power. In determining what was meant by a general power, therefore, it is important to consider in what respect such a power differs from a special power in relation to the estate of the decedent, for it is upon the estate of the decedent that the tax is levied. There is no difference, of course, with respect to the source of the property; for, whether the power be general or special, it is well settled that the existence of the power does not of itself vest an estate in the donee, and that upon its exercise the appointee takes under the donor. U. S. v. Field, supra. There is no difference with respect to the passing of the property to the appointee; for, in either case, the appointee takes no interest until the power is exercised, and can no more be said to have received property by the act of the donee in the one case than in the other. The only difference between the two, so far as they can be said to affect the estate of the donee of the power, is that in the case of the general power the donee has the right to exercise same in favor of his creditors, whereas in the case of the special power he does not have such right. Upon the death of the donee of a general power this right terminates; and something has passed from him to those who have taken the property under the appointment, viz., the right to subject the property to his debts. In the case of a special power, nothing whatever passes from the donee or his estate by reason of his death.

In this respect, the case of a general power of appointment is analogous to that of a policy of insurance where the insured has the right to change the beneficiary and thus secure for his estate or his creditors the proceeds of the policy. In such case it is held that the proceeds of the policy may properly be included in the estate of the insured for the purpose of the estate tax. See Chase Nat. Bank v. U. S., 278 U. S. 327, 335, 49 S. Ct. 126, 127, 73 L. Ed. 405, 63 A. L. R. 388, where the court said:

"A power in the decedent to surrender and cancel the policies, to pledge them as security for loans and the power to dispose of them and their proceeds for his own benefit during his life which subjects them to the control of a bankruptcy court for the benefit of his creditors, Cohen v. Samuels, 245 U. S. 50, 38 S. Ct. 36, 62 L. Ed. 143 (see Burlingham v. Crouse, 228 U. S. 459, 33 S. Ct. 564, 57 L. Ed. 920, 46 L. R. A. [N. S.] 148), and which may, under local law applicable to the parties here, subject them in part to the payment of his debts, N. Y. Domestic Relations Law, N. Y. (chapter 14, Consol. Laws), § 52; Kittel v. Domeyer, 175 N. Y. 205, 67 N. E. 433; Guardian Trust Co. v. Straus, 139 App. Div. 884, 123 N. Y. S. 852, affirmed 201 N. Y. 546, 95 N. E. 1129, is by no means the least substantial of the legal incidents of ownership, and its termination at his death so as to free the beneficiaries of the policy from the possibility of its exercise would seem to be no less a transfer within the reach of the taxing power than a transfer effected in other ways through death."

The inclusion for purposes of estate taxation of property transferred under a general power is analogous also to the inclusion of property transferred in trust with power of revocation reserved to the grantor. It is held that upon the grantor's death such property should be included in valuing his gross estate, upon the principle that the passing from him of the power and control over the property is taxable as a transfer. Reinecke v. Trust Co., 278 U. S. 339, 345, 49 S. Ct. 123, 73 L. Ed. 410, 66 A. L. R. 397; Saltonstall v. Saltonstall, 276 U. S. 260, 271, 48 S. Ct. 225, 72 L. Ed. 565.

[redacted] Except that the donee of a general power may exercise it in favor of his creditors and thus use the property which is the subject of the power for his own use and bene-

fit, there is no basis for including in his taxable estate property which is subject thereto; for this right is all that passes from his estate by reason of his death. In Y. M. C. A. v. Davis, 264 U. S. 47, 44 S. Ct. 291, 292, 68 L. Ed. 558, the Supreme Court said: "What this law taxes is not the interest to which the legatees and devisees succeeded on death, but the interest which ceased by reason of death." By this language we understand the court to mean that the tax is imposed on what is transferred from decedent as a result of his death (New York Trust Co. v. Eisner, 256 U. S. 345, 41 S. Ct. 506, 65 L. Ed. 963, 16 A. L. R. 660; Knowlton v. Moore, 178 U. S. 41, 20 S. Ct. 747, 44 L. Ed. 969); and it logically follows that, where nothing is transferred, as where property passes under a limitation in remainder, there is no transfer to tax. Reinecke v. Trust Co., supra. Nothing passes or is transferred from the estate of the donee in the case of a naked or special power of appointment, and Congress has recognized this fact by not requiring that property passing under a special power be included in the estate. It is only property subject to a general power—property of which the donee might have obtained the benefit by subjecting it to the payment of his debts—which is required to be included.

This conclusion follows, we think, not only from the general nature of the estate tax, but also from the history of the provision here under consideration. The revenue act of 1916 did not provide for including in the valuation of the gross estate of decedent property passing under a general power, even though such property might have been subjected to the claims of creditors. U. S. v. Field, supra, 255 U. S. 257, 41 S. Ct. 256, 65 L. Ed. 617, 18 A. L. R. 1461. In recommending the amendment of the law to provide that such property be included, the Ways and Means Committee of the House, H. R. 767, 65th Cong., 2d Sess., p. 21, said:

"A person having a general power of appointment is, with respect to disposition of the property at his death, in a position not unlike that of its owner. The possessor of the power has full authority to dispose of the property at his death, and there seems to be no reason why the privilege which he exercises should not be taxed in the same degree as other property over which he exercises the same authority."

It thus appears that the purpose of Congress was to tax property in relation to which the donee of a power stands in a position not unlike that of owner, property over which he exercises the same authority as he does over that which he owns. This could be said of property which he could subject to the payment of his debts. It could not be said of a naked power which he could not exercise for his own benefit or for the benefit of his estate.

We come, then, to the question as to whether the power created by the conveyance of Charles Carroll Fulton, the language of which we have quoted above, is a general power within this meaning of the act of Congress. This is to be determined by the law of Maryland; for, while we look to the federal decisions, and in the absence of such decisions, to the general law, in interpreting the act of Congress, we look to the law of Maryland as laid down by its courts to determine the effect of conveyances executed within that state and relating to property there situate. Tyler v. U. S., 281 U. S. 497, 501, 50 S. Ct. 356, 74 L. Ed. 991, 69 A. L. R. 758; Warburton v. White, 176 U. S. 484, 20 S. Ct. 404, 44 L. Ed. 555. And under the law of Maryland it seems to be well settled that language such as that contained in the Fulton conveyance does not confer upon the donee of the power the right to exercise same in favor of his own creditors. The language used in that conveyance, it is true, is such as in most jurisdictions would be held to create a general power with right in the donee to exercise it in favor of his creditors; but we are concerned, not with what meaning and effect would be given that language generally, but with what meaning and effect is given it by the Maryland law as laid down by the courts of that state. Under their decisions, the language used creates, not a general power, but one limited to the extent that it may not be exercised by the donee for his own benefit or for the benefit of his estate or of his creditors. In other words, it creates a mere naked power from which neither the donee nor the creditors of his estate can profit.

This rule was laid down by the Maryland court in Balls v. Dampman, 69 Md. 390, 16 A. 16, 17, 1 L. R. A. 545. In that case land had been devised to Elizabeth A. Balls for life, with power in her "to will and dispose of the same in such manner as she may see fit, by any instrument, in the nature of a last will and testament, she may see proper to make." Mrs. Balls, possessing a small personal estate but no real estate, left a will, the two pertinent provisions of which were as follows: "First. I order and direct all my just debts and funeral expenses to be paid.

Item. I hereby devise and bequeath to my two youngest daughters, namely, Elizabeth Balls and Sallie Balls, all my property, real, personal, and mixed, and all my estate of every kind whatsoever, and wheresoever situate." It was held that the will was a sufficient execution of the power, as it would be inoperative as to real estate expressly mentioned without the aid of the power. Upon the contention that the real estate should be applied to the satisfaction of the debts of the testatrix, this was denied upon two grounds: (1) That the first clause of the will did not evince an intention to charge the real estate with the payment of debts, and (2) that the testatrix was without power to direct that the real estate be applied to that purpose. Upon the latter point the court said:

"There is another and an equally serious difficulty across the appellant's path. Mrs. Balls had, under her husband's will, only the power to appoint—that is, to name by will—the person or persons to whom the property should go; and she had no authority to devise it for the payment of her debts—that is, to incumber or consume it altogether for her own use. The construction insisted on would, if adopted, practically convert her from a mere life-tenant into an owner of the fee. She had no right to bind this property for the payment of her debts, or to fasten those debts upon it; and, had such an intention on her part been expressly stated in her will, it could not have been given effect, because not within the scope of her power of appointment. Much less, then, can such a result be constructively and inferentially reached. It is manifest, therefore, that this first clause cannot, upon any principle, be given the effect contended for."

In the later case of Price v. Cherbonnier, 103 Md. 107, 63 A. 209, although the precise point was not involved, the court quoted with approval as the settled law of Maryland this language from Balls v. Dampman, and also cited with approval Com. v. Duffield, 12 Pa. 277 and Wales' Adm'r v. Bowdish's Ex'r, 61 Vt. 31, 17 A. 1000, 4 L. R. A. 819, as sustaining the proposition that creditors of the donee of the power have no equity in the property. The citation of these cases becomes of importance when it is remembered that under the general doctrine the equity of creditors rests upon the power of the donee to appoint in their favor. In the case of Galard Prince de Bearn v. Winans, 111 Md. 434, 74 A. 626, Price v. Cherbonnier was cited with approval as holding that the exercise of a general power of appointment did not render the appointed property liable for the donee's debts.

In the light of these authorities, we would not be justified in holding otherwise than that, under the law of Maryland, language such as that used in Fulton's conveyance, which would ordinarily create a general power with right in the donee to appoint for the benefit of his own creditors, does not have such effect in Maryland, but creates a naked power from which neither the estate of the donee nor his creditors can possibly benefit. This does not mean that a general power cannot be created in Maryland. It means merely that language such as this, sufficient to create a general power elsewhere, creates merely a special power in Maryland for the reason that under the Maryland law the donee under such a power cannot exercise same in the interest of himself or his creditors. A general power could doubtless be created in Maryland by expressing in the language creating it what is held to be implied in most other jurisdictions, viz., that the donee may exercise same for his own benefit or for the benefit of his creditors; but unless this is expressed, the power under the Maryland decisions is not general, but limited; and being limited, it does not come within the meaning of a general power of appointment as that term is used in the language of the revenue act.

It is argued that the effect of holding that the power here is a special or limited power because of the Maryland law is to destroy the uniformity of operation of the statute, as the language used would unquestionably create a general power in most other states. We do not think so. The revenue act provides for the inclusion only of property passing under general powers; and, if a will or deed, as properly interpreted under the applicable law, creates a power which is not general but special or limited, it does not fall within the meaning of the act. Language such as used in this conveyance would create a general power in Massachusetts; but, if a grantor in Massachusetts should include in his conveyance a provision embodying what, as we have seen, is implied by law in Maryland, the power would be not general, but special or limited. And if this grantor in Maryland had included in this conveyance language conferring the right which the law of Massachusetts implies, the power would have been not limited but general. If, on the other hand, we were to hold this power to be general merely because the language used would create a general power in most jurisdictions,

762

it would result that property passing under such a power would be taxable in Maryland, whereas, if the donee were given in Massachusetts exactly the same powers as the law limits him to in Maryland, the property would not be taxable. Only by considering, not merely the language creating a power, but the effect and meaning which is given that language by the law of the state which governs the exercise of the power, can uniformity in the operation of the statute be attained.

The decision in Fidelity-Philadelphia Trust Co. v. McCaughn (C. C. A. 3rd) 34 F. (2d) 600 is not in conflict with our conclusion. In that case it was held that a general power was not to be deemed special because property passing under it could not under the law of the state be subjected in equity to the claims of donee's creditors. This is very different from holding that a power which the donee himself cannot exercise in favor of his creditors is to be deemed general. The test is the power of the donee under the state law, not the rights of creditors under that law.

As to the property on Eutaw street, the decision of the Board of Tax Appeals will be affirmed; as to the newspaper property it will be reversed and the cause will be remanded for further proceedings not inconsistent with this opinion.

Reversed in part and remanded.