**MARYLAND NATIONAL BANK, a body corporate,**

**and**

**George Marriott Radcliffe, Executors under the Will of Virginia Appleton Wilson,**

**v.**

**UNITED STATES of America.**

**Civ. No. 14328.**

United States District Court
D. Maryland.
Dec. 21, 1964.

William H. Gorman, II, Baltimore, Md. (Niles, Barton, Gans & Markell, Baltimore, Md., on the brief), for plaintiffs.

John M. Hammerman, Atty. Dept. of Justice, Washington, D.C. (Louis F. Oberdorfer, Asst. Atty. Gen., C. Moxley Featherston and David A. Wilson, Jr., Attys., Dept. of Justice, Washington, D. C., and Thomas J. Kenney, U. S. Atty., and Robert W. Kernan, Asst. U. S. Atty., Baltimore, Md., on the brief), for defendant.

THOMSEN, Chief Judge.

This is a suit by the executors under the will of Virginia Appleton Wilson to recover $28,671.85, together with $4,667.-62 statutory interest thereon, an aggregate of $33,339.46, paid by them as additional estate taxes following an assessment by the Internal Revenue Service.[1] The question presented is whether her executors should have included in her taxable estate the value of the corpus of a trust created by the will of her father, J. Appleton Wilson, under which she had a power of appointment.

J. Appleton Wilson executed his last will and testament in April 1926 and died in Baltimore City in April 1927, leaving his widow, Mary Wade Wilson, and his daughter, Virginia, as his next of kin. After providing for payment of his debts and funeral expenses, he bequeathed his automobile to his daughter and left all the rest and residue of his property, real and personal, to the Colonial Trust Company of Baltimore City, in trust, to collect the income therefrom and, after payment of expenses, to pay two-thirds (⅔) of the remaining income to his widow during her life, and one-third (⅓) to his daughter during her life. After the death of either of them the trustee was directed to pay the entire net income to the survivor for life, with the rather old fashioned provision that "neither the said property nor the income therefrom shall be in anyway liable for the debts of any future husband of my said daughter, nor in any manner subject to his control or management, neither shall he be eligible for such trusteeship."

The will then provided: "The survivor of my said wife and my said daughter shall have full power to pass absolutely by will to such person or persons or for such purposes as she may nominate, my entire remaining Estate, both real and personal." No provision was made for the disposition of the trust property if the survivor failed to exercise the power.

Mrs. Wilson, the widow of the testator, died in July 1935, leaving a will, in which she devised and bequeathed all the rest, residue and remainder of her estate to her daughter Virginia, if the daughter were living at the time of her death.

The daughter survived both parents and, under the provisions of her father's will, was paid the entire net income of the trust until her death. She died in September 1957, in Baltimore, leaving a will in which she specifically exercised the power of testamentary appointment given her by her father's will and named various individuals and charitable and religious institutions as the recipients of the entire trust estate then in the hands of the trustee.[2]

In Morgan v. Commissioner, 309 U.S. 78, 626, 60 S.Ct. 424, 84 L.Ed. 585, 1035 (1940), the Supreme Court stated that: "[i]n the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property or income sought to be reached by the statute." In this case the State law is the law of

---

1. The executors complied with statutory requirements by filing a claim for refund of the tax and interest paid, which was disallowed by the Service. They claim interest on the total amount which they paid.

2. Through various corporate mergers since 1926, Colonial Trust Company of Baltimore City is now Maryland National Bank which was the trustee under the will of J. Appleton Wilson at the time of his daughter's death. Maryland National Bank and George Marriott Radcliffe are the executors under the daughter's will.

Maryland, which will be discussed below. Federal law, of course, determines the taxability of the interests once they have been established under State law. Sec. 2033 of the Internal Revenue Code of 1954, provides that the value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death. Sec. 2041(a) requires the inclusion in the gross estate of the value of property passing under certain "general powers of appointment", as that term is carefully defined in sec. 2041(b). To constitute a general power under sec. 2041, the power must be exercisable in favor of the decedent, his estate, his creditors and the creditors of his estate.

The parties are agreed that under Maryland law the daughter could not have exercised the power of appointment which she had under her father's will, quoted above, in favor of herself, her creditors, her estate, or the creditors of her estate, since her father's will did not expressly grant permission to do so. Lamkin v. Safe Deposit & Trust Co., 192 Md. 472, 64 A.2d 704 (1949). Curiously, the Maryland courts call such a power of appointment a "general power", Lamkin v. Safe Deposit & Trust Co., supra; O'Hara v. O'Hara, 185 Md. 321, 44 A.2d 813, 63 A.L.R. 1444 (1945); Balls v. Dampman, 69 Md. 390, 16 A. 16, 1 L.R.A. 545 (1888); Leser v. Burnet, 4 Cir., 46 F.2d 756 (1931). But the government concedes that it is not a "general power of appointment" under sec. 2041 which, standing alone, would require inclusion of the value of the assets of the trust in the estate of the holder of the power of appointment.

The government contends, however: (1) Since the will of J. Appleton Wilson made no provision for the disposition of the residue of his estate if the survivor of his widow and his daughter did not exercise the power of appointment granted to the survivor, he died partially intestate; that such partial intestacy gave rise to a reversionary interest which vested in his heirs and next of kin at the time of his death, although it would not come into possession unless and until the survivor of his wife and his daughter failed to exercise the power of appointment; and since the widow and the daughter were his sole heirs and next of kin at the time of his death, and the widow left the entire residue of her estate to the daughter, the entire reversionary interest was vested in the daughter after her mother's death. So, the government argues, the daughter thereafter had a life interest in the entire income, a power to appoint by will to anyone except her estate or creditors, and the entire interest in the reversion if she did not exercise her power of appointment. (2) From these premises the government argues: (a) that the various interests of the daughter in the trust assets were merged, so that she owned the property outright, (b) that she could renounce her life estate and power of appointment and take the property outright, and (c) that she could deliberately fail or refuse to exercise her power of appointment, in which event the government contends the property would have come into the possession of her executors. In fact, the daughter did not renounce her life estate and did not fail or refuse to exercise the power; rather, she did what her father had contemplated she would do, and exercised the power of appointment. Nevertheless, the government contends, relying on propositions (a), (b) and (c) above, that the daughter had such an interest at the time of her death that the value of the trust assets must be included in her gross taxable estate.

### I.

The Maryland cases indicate that if a testator creates an equitable life estate with power of appointment by will, and makes no provision for the disposition of the remainder interest if the holder of the power fails to exercise it, a reversionary interest passes to the heirs and next of kin of the testator. The reversion vests in interest in the heirs and next of kin of the testator at the time of his death, subject, however, to being divested on the execution of the power, and is alienable and devisable by

them, although it will not vest in possession unless and until the holder of the power of appointment does in fact fail to exercise the power, Mines v. Gambrill, 71 Md. 30, 18 A. 43 (1889); Perkins v. Iglehart, 183 Md. 520, 39 A.2d 672 (1944). See also Evans v. Safe Deposit & Trust Co., 190 Md. 332, 58 A.2d 649 (1948).

In Baker v. Baylies, 231 Md. 287, 189 A.2d 820 (1963), the Court of Appeals said:

> "The incongruity of finding an intent to ultimately give to a legatee who is a life tenant the remainder outright, as heir, after his death, has been commented on in the texts and the cases, 3 Restatement Property Sec. 308, Comment k; 5 American Law of Property, Sec. 22.59 (pp. 431–432); cases collected in Note 30 A.L.R.2d 393, 413, et seq.; but this has not prevented judicial constructions that such a result was intended or required. See Weller v. Kolb, 128 Md. 221, 97 A. 542; cf. Safe Deposit & Trust Co. [of Baltimore] v. Carey, 127 Md. 593, 596–597, 96 A. 796."

The Maryland Court has failed so far to adopt any resulting "trust" or other theory for avoiding this result; cf. Butler v. Citizens & Southern Nat. Bank, 211 Ga. 414, 86 S.E.2d 520 (1955). Where possible, however, the Maryland Court has construed the provisions of a will to avoid the incongruous result referred to in Baker v. Baylies, supra. Other courts do the same; see e. g. McKay v. Audubon Society, 318 Mass. 482, 62 N.E.2d 117 (1945).[3]

The instant case differs from Mines v. Gambrill because that case arose after the holder of the power of appointment had in fact failed to exercise the power. It differs from Perkins v. Iglehart, because in that case the estates given by the will, after the termination of two legal life estates, were void ab initio because of a violation of the rule against perpetuities; thus the reversion in Perkins v. Iglehart was sure to vest in possession, whereas in the instant case, if the daughter exercised her power of appointment, as the testator intended she should (and as in fact she did), the reversion never would vest in possession (and in fact it never did). Nevertheless, this Court is constrained to hold that the reversionary interest vested in the heirs of the testator in being at the time of his death, subject to being divested by the exercise of the power, and that his wife's interest therein passed to the daughter under the wife's will, so that the entire reversionary interest became vested in the daughter after the death of the wife, subject to being divested by the exercise of the power of appointment.

We must also keep in mind the general rule that "[i]n construing wills the supreme law of every case is the intention of the testator, and when once that is ascertained, it must be given effect, insofar as it is lawful, and all other considerations whatsoever must yield to it." Judik v. Travers, 184 Md. 215, 221, 40 A.2d 306, 309 (1944). Miller, Construction of Wills, sec. 14.15; Sykes, Probate Law and Practice (Maryland Practice, vol. 1), sec. 51.

## II.

The government's arguments (a), (b) and (c) must be weighed in the light of these principles. It seems clear that the testator, J. Appleton Wilson, did not intend that his daughter should ever acquire an absolute interest in the trust property; on the contrary, he intended that the daughter should be protected against the dangers of holding an absolute estate, i. e. dangers from a husband and other predators. It would be con-

---

3. If the testator had directed his attention to the problem of who would inherit the property if the survivor of his wife and daughter failed to exercise the power, it is probable that he would have preferred the property to go to his own family rather than to the family of his wife or to the heirs of his daughter if she left no children. But the will made no provision for any remainder interest.

trary to his general intention, gathered from his entire will, to hold either (a) that the daughter acquired an absolute interest in the property by merger or otherwise when she received her mother's share of the reversionary interest at the time of her mother's death, or (b) that the daughter could have renounced the power of appointment and thereby have destroyed her equitable life estate and acquired an absolute interest in the trust property. Although the Court of Appeals of Maryland permitted such a result when it approved the settlement agreement in White v. Roberts, 145 Md. 405, 125 A. 733 (1924), it stated in O'Hara v. O'Hara, 185 Md. 321, 44 A.2d 813, 163 A.L.R. 1444 (1945): "We think the correct rule is that a general and beneficial power of appointment by will may be released and extinguished by the donee's deed provided that there is no frustration of the donor's intention". 185 Md. at 326, 44 A.2d at 816. In the instant case the intention of the testator would have been frustrated by such a deed.

There remains the government's argument (c), that since the daughter could have failed or refused to exercise the power, so that the trust property would have passed to her executors or her heirs or devisees, its value should be included in her gross estate under sec. 2033.

It is true that if the daughter had failed to exercise the power given her by her father's will, the reversion would have vested in possession in her executors, heirs or devisees, and would undoubtedly have been taxable as part of her estate. However, it never did vest in possession in them, because the daughter did not fail to exercise the power. In fact, she did exercise the power, and the property passed to the appointees, from her father and not from her, according to accepted legal principles.

The value of the trust property must be included in the gross estate, if at all, by virtue of sec. 2033 of the Code. If it is so included, it must be valued under sec. 20.2031–1(b) and 20.2031–9 of the Regulations, which require valuation on the basis of *market value*.

This is not the simple case of a reversionary interest which is sure to take effect after the life of another.[4] In this case, the reversion was subject to being divested by the exercise of the power of appointment, and therefore terminated when the daughter died having exercised the power.[5] Although the reversionary interest was vested (subject to being divested) in the same person who held the power of appointment (the daughter), the reversionary interest had no market value. The daughter could not have sold the reversionary interest to anyone, because she could not make a legally enforceable contract to refuse to exercise the power. Such an agreement would have been contrary to the clear intention of her father's will. See O'Hara v. O'Hara, 185 Md. 321, 44 A.2d 813, 163 A.L.R. 1444 (1945). To be includible in the gross estate of the daughter the interest must have had some market value at the time of her death.

"Since death is the propelling force for the imposition of the tax, it is death which determines the interests to be includible in the gross estate. Interests which terminate on or before death are not a proper subject of the tax. Assets may be acquired or disposed of before death, possibilities of the loss of an asset may become actualities or may disappear. Upon the same principle underlying the inclusion of interest in a decedent's gross estate, valuation of an interest is neither logically made nor feasibly administered until death has occurred. The taxpayer's theory of valuing property before death disregards the fact that generally the estate tax is neither

---

4. Such reversions are valued under sec. 20.2031–7(d).

5. Other reasons for taxability exist where the reversion is vested in the donor under a deed of trust. See sec. 2037 of the I.R.C. of 1954; Regulations, Estate and Gift Taxes, sec. 20.2037–1(c).

concerned with changes in property interests nor values prior to death. The tax is measured by the value of assets transferred by reason of death, the critical value being that which is determined as of the time of death." Goodman v. Granger, 3 Cir., 243 F.2d 264, 268, 269 (1957).

See also Mertens' Law of Federal Gift and Estate Taxation, vol. 1, § 6.01. No authority has been cited or found which justifies the inclusion of the value of the trust property in the taxable estate of the daughter.

Judgment will be entered in favor of the plaintiffs. Counsel should agree on the proper amount promptly.