FRANK *v.* FRANK, ETC., ET AL.

[No. 219, September Term, 1968.]

*Decided May 7, 1969.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, McWILLIAMS, FINAN and SMITH, JJ.

*Reuben Shiling* for appellant.

*Paul Walter,* with whom was *Lee M. Miller* on the brief, for appellees.

HAMMOND, C. J., delivered the opinion of the Court.

If the power of testamentary appointment given by the will of Henry S. Frank to his wife Ruth authorized her to appoint to her estate so as to come within the marital deduction provisions of the federal estate tax laws, the federal government will not receive some seventy-five thousand dollars in additional estate taxes it claims to be due; if it did not authorize appointment to her estate, the estate will be that much poorer and the government that much richer.

The widow filed a bill against those who would take in the absence of appointment for a declaration as to the nature and scope of the power of appointment given by Henry Frank's will and what rights Ruth Frank has thereunder and in particular whether she "has the power validly to appoint 50% of the trust [estate remaining at her death] to her estate or to her creditors." Judge Wolf held and decreed that she could not appoint to her estate or to her creditors. We think he was right.

The parties, pursuant to Maryland Rule 828 g, agreed that: Henry Frank died in 1963 survived by his wife Ruth, whom he had married in 1916, and three adult children; in 1956 he consulted his lawyer about a will and it was "determined that a will would be drawn which, among other things, would secure for the benefit of the decedent's estate the 'full marital deduction' in the form of a marital trust [and] [i]n order to accomplish this end it was necessary * * * to grant to the widow a general power of testamentary appointment. The draftsman did

prepare a will which, intending to include a general power of testamentary disposition, provided:

'I hereby confer upon my said wife full and complete testamentary power of disposition over fifty per cent (50%) of the rest, residue and remainder of my estate [which had been left in trust for the wife for life], free and clear of all trusts.' "

The testator executed the will in 1956 and it remained unaltered until his death. The executor took the full marital deduction on the federal estate tax return. On audit the deduction was disallowed because in the judgment of the Internal Revenue Service the power was, to use the words of the agreed upon statement of facts, "insufficient to qualify the wife's trust [because] the power * * * was not 'general' in that it did not include a specific power to appoint to her own estate or to her creditors."

The Maryland law on powers of testamentary appointment is unusual if not unique. A power to appoint or dispose of property by will, unrestricted as to beneficiaries, as for example, "in such manner as she may see fit" (*Balls v. Dampman*, 69 Md. 390, 391) or "to such person or persons as she may limit, nominate, and appoint" (*Lamkin v. Safe Deposit & Trust Co.*, 192 Md. 472, 475), is called in Maryland a general power, as it is in most jurisdictions, but unlike most jurisdictions, Maryland holds that such a power does not authorize the holder of the power to appoint to himself, to his own estate or to his creditors unless the power in terms so authorizes (with the exception that where the donee and donor of the power are the same person, an appointment may be made to a creditor, *Wyeth v. Safe Deposit and Trust Co.*, 176 Md. 369).

The Maryland variations of the general rule were first announced in 1888 in *Balls v. Dampman, supra*. There, although her husband's will gave Mrs. Balls the power "to will and dispose of the [real estate given her for life] in such manner as she may see fit," Judge McSherry for the Court, held that she had:

"only the power to appoint, that is, to name by will,

the person or persons to whom the property should go; and she had no authority to devise it for the payment of her debts, that is, to encumber or consume it altogether, for her own use. The construction insisted on would, if adopted, practically convert her from a mere life tenant into an owner of the fee." [69 Md. at 394]

This basic holding that the donee of a testamentary power otherwise general.may not direct property subject to the power to his own use, absent a specific enabling grant of that power, has been said a number of times by this Court to be the law of this State. See *Price v. Cherbonnier*, 103 Md. 107; *Prince de Bearn v. Winans*, 111 Md. 434; *Pope v. Safe Deposit and Trust Co.*, 163 Md. 239; and *Mercantile Trust Co. v. Bergdorf & Goodman*, 167 Md. 158. In *Connor v. O'Hara*, 188 Md. 527, in holding that for purposes of the Maryland inheritance tax laws, property passing by exercise of a testamentary power of appointment is regarded as passing not from the donee of the power but from the donor, Judge Markell, for the Court, said that this theory of passage not only is as fully applicable in Maryland as elsewhere but has been carried further here than in many other jurisdictions, and continued:

"In England, and generally but not universally in this country, this rule is qualified by a rule that when a general power of appointment is exercised, equity will regard the property appointed as part of the donee's assets for the payment of his creditors in preference to the claims of his voluntary appointees. In such cases the appointed property is treated as equitable, not legal, assets of the donee's estate, and may pass to the executor, not by virtue of his office but as a matter of convenience and because he represents the rights of creditors. *United States v. Field*, 1921, 255 U. S. 257, 262, 263, 41 S. Ct. 256, 65 L. Ed. 617, 18 A.L.R. 1461. In Maryland this English rule has been rejected. Decisions or dicta of this court indicate that a donee has no power (unless expressly conferred) to appoint for payment of his own debts. *Balls v. Dampman*, 69 Md. 390, 16 A. 16, 1 L.R.A. 545; *Price v. Cherbonnier*, 103

Md. 107, 110, 111, 63 A. 209; *cf. Wyeth v. Safe De-posit & Trust Co.,* 176 Md. 369, 376, 4 A. 2d 753; appointed property is not part of the donee's estate, not subject to the juridiction of the Orphans' Court, and not subject to payment of the donee's debts. *Prince de Bearn v. Winans,* 111 Md. 434, 472, 74 A. 626." [188 Md. at 530-531]

*Lamkin v. Safe Deposit & Trust Co.,* 192 Md. 472, 479, re-iterated that property passing under a Maryland general power of testamentary appointment is the property of the donor and not the donee and:

"therefore the property cannot be appointed by the donee for the payment of his debts or to his estate * * *. If there are no other restrictions placed upon its exercise, then it is what is called a general power of appointment, under which, with the exceptions mentioned, the donee can dispose of it in the same manner as he can dispose of his own property."

The federal courts have held that under Maryland law a general power of testamentary appointment does not authorize disposition of the property subject to the power for the benefit of the donee or his estate or his creditors. In 1931 before the marital deduction existed, the United States Circuit Court of Appeals for the Fouth Circuit so held in *Leser v. Bur-net,* 46 F. 2d 756, 761 (with the result that the appointive property did not become taxable as part of the estate of the donee). Judge Parker for the Court said:

"In the light of these [Maryland cases], we would not be justified in holding otherwise than that, under the law of Maryland, language such as that used in Fulton's conveyance, which would ordinarily create a general power with right in the donee to appoint for the benefit of his own creditors, does not have such effect in Maryland, but creates a naked power from which neither the estate of the donee nor his creditors can possibly benefit. This does not mean that a general power cannot be created in Maryland. It means merely that language such as this ["for the use and behoof of

such person or persons as she, by her last will * * * shall have named * * * to take and have the same"], sufficient to create a general power elsewhere, creates merely a special power in Maryland for the reason that under the Maryland law the donee under such a power cannot exercise same in the interest of himself or his creditors. A general power could doubtless be created in Maryland by expressing in the language creating it what is held to be implied in most other jurisdictions, viz., that the donee may exercise same for his own benefit or for the benefit of his creditors; but unless this is expressed, the power under the Maryland decisions is not general, but limited; and being limited, it does not come within the meaning of a general power of appointment as that term is used in the language of the revenue act."

*Leser v. Burnet* has been considered as representing a valid expression of Maryland law by commentators. See Moser, *Some Aspects of Powers of Appointment in Maryland,* 12 Md. L. Rev. 13; Gold, *The Classification of Some Powers of Appointment,* 40 Mich. L. Rev. 337; Gump, *The Meaning of "General" Powers of Appointment under the Federal Estate Tax,* 1 Md. L. Rev. 300; Note, *Rights of Creditors under a Testamentary General Power of Appointment,* 4 Md. L. Rev. 297, 299-300. In Vol. I, No. 1 (October 1, 1967) of *Wills, Estates and Trust,* a publication of the Maryland State Bar Association, the publication committee, with the approval of the Probate and Estate Law Section Council and the Board of Governors, cites among other cases *Balls v. Dampman, Connor v. O'Hara* and *Lamkin v. Safe Deposit,* and says:

"The effect of these cases is that unless specifically spelled out, if a grantor or a testator only gives a power to appoint 'to any one whatsoever', or 'to such person or persons, as she may select', or, to be extreme, 'to any one else in the world whether now or hereafter born', the gift does not include the power to appoint to the estate of the donee, or to the donee."

The appellant urges upon us that in no Maryland case since

*Balls v. Dampman* was the statement as to the Maryland law necessary to the point actually decided, that no Maryland case was decided in the context of the federal marital deduction provisions, that the overriding and ultimate test is the intent of the testator and that the testator here intended to obtain the maximum benefit from the marital deduction, and that the testator's intent should be gratified. We find none of these contentions persuasive. The law on the point has been explicitly and firmly established in Maryland since 1888. The United States Court of Appeals for the Fourth Circuit in 1964 in effect rejected the contentions now made by appellant, we think properly, in *Pierpont v. C. I. R.* (4th Cir.), 336 F. 2d 277, *cert. denied*, 380 U. S. 908. There the will of a resident of Maryland directed that if his wife survived him his executor was to determine an amount which would be equal to one-half of his "adjusted gross estate" less any other property qualifying for the marital deduction which would or had passed to his wife and left the net sum so determined in trust for his wife for life. He gave his wife power to appoint the trust estate by will "in such manner and proportions as my said wife may designate." The Court followed *Leser v. Burnet* and held that because the testator had not explicitly authorized his wife to appoint to herself, her estate or her creditors, under Maryland law she could not do so and therefore the power was not a general power within the meaning of the marital deduction provision and the appointive estate must be included in the taxable estate. This was held despite the fact that the testator after discussion and advice had told his lawyers that he desired to take the fullest advantage of the marital deduction and that he followed his lawyer's advice as to how to accomplish this, as well as the fact that the Circuit Court of Baltimore City had passed a decree in a "friendly" proceeding that the wife did have the right to appoint to her estate. The Court said:

> "We must conclude, therefore, that *Leser v. Burnet*, 46 F. 2d 756 (4 Cir. 1931), is not at variance with the way the Maryland Court of Appeals would decide the issue were it called upon for a specific holding and is controlling on the question we face here.
> \* \* \*

"Maryland courts have fashioned a rather strange animal of the general power of appointment where the donor and donee are separate entities and where the donee has not been given the specific power to appoint to his own use. While calling this power a general power of appointment, it is a creature apart from the general power of appointment found in the other states. Nonetheless, entertaining proper respect for the law of Maryland as announced by its highest court, * * * that 'Whether or not this is the kind of will which [decedent] ought to have made, we are not at liberty to rewrite it for him or to determine what he ought to have done.' *Gaither v. Fidelity-Baltimore Nat'l Bank & Trust Co.*, 208 Md. 8 * * *." [336 F. 2d at 283]

See also *Estate of William C. Allen,* 29 T. C. 465 (1957).

The words used by the testator before us are precise and do not specifically authorize the donee to appoint the property for her own benefit, and under the law of this State in effect when the will was written and in effect now those words meant and mean that his wife could not dispose of the trust estate for her own use or benefit or for that of her creditors.

That the draftsman of the will used those words thinking they meant more than they did and do and intending that they should is not controlling. Clear and unambiguous word in a will must be given the meaning they customarily and normally have and it is from this meaning that the intent of the testator is to be found. An intent to permit a wife to whom an estate has been left in trust, rather than outright, to make a gift of the estate to herself or to her creditors could not lightly or readily be inferred from words that do not legally convey such a meaning. As the authors of Vol. 1, No. 1, of *Wills, Estates and Trusts,* referred to above, put it: "But are there many testators who, if presented with the choice, would voluntarily make a gift to their spouses' post-death creditors?"

*Decree affirmed, with costs.*