**Emily D. Leahy GUINEY, Executrix of the Estate of Arthur Hamilton Leahy, deceased, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 13642.**

United States Court of Appeals, Fourth Circuit.

Argued Feb. 4, 1970.

Decided April 22, 1970.

---

William Graham Boyce, Jr., Baltimore, Md., for appellant.

Richard Farber, Atty., Dept. of Justice (Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson and Loring W. Post, Attys., Dept. of Justice, and Stephen H. Sachs, U. S. Atty., on brief), for appellee.

Before SOBELOFF, BOREMAN and BRYAN, Circuit Judges.

SOBELOFF, Circuit Judge:

A widow, as executrix of her husband's estate, instituted an action for the recovery of federal estate taxes assessed and paid. The case is here on the taxpayer's appeal from an adverse judgment of the United States District Court for the District of Maryland, 295 F. Supp. 789 (1969).

▮ The only question we need decide is whether the "general power of appointment" granted to the widow by Item Second of the will of Arthur Hamilton Leahy gave her the power to appoint the principal of the trust to herself or her estate as is required by section 2056(b) (5) [1] of the Internal Reve-

---

1. Section 2056(b) provides in pertinent part:
   (5) *Life estate with power of appointment in surviving spouse.*—In the case of an interest in property passing from the decedent, if his surviving spouse is entitled for life to all the income from the entire interest, or all the income from a specific portion thereof, payable annually or at more frequent intervals, with power in the surviving spouse to appoint the entire interest, or such specific portion (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), and with no power in any other person to appoint any part of the interest, or such specific portion, to any person other than the surviving spouse—
   (A) the interest or such portion thereof so passing shall, for purposes of subsection (a), be considered as passing to the surviving spouse, and
   (B) no part of the interest so passing shall, for purposes of paragraph (1) (A), be considered as passing to any person other than the surviving spouse.
   This paragraph shall apply only if such power in the surviving spouse to appoint the entire interest, or such specific por-

nue Code in order to qualify for the marital deduction. If the will gave the widow this power, the Commissioner of Internal Revenue improperly denied the marital deduction and the District Court should have entered judgment in her favor.

Mr. Leahy made a bequest to trustees for his surviving wife for life, with a testamentary power of appointment. This was done in accordance with a standard formula clause to determine the property qualifying for the marital deduction. Item Second of the will then added the following relevant language:

> However, I want to make it clear that I am giving my wife a general power of appointment over this trust in order that one-half of my estate may qualify for the marital deduction * * * as it is fully my intention to take advantage of the marital deduction as provided by the Internal Revenue Code of 1954, or amendments made thereafter.

According to the Commissioner, Item Second failed to achieve its purpose because in his view of the Maryland law the wife could not appoint the trust principal to herself or her estate. His ruling increased the federal estate tax liability by $12,467.02.

Considering the provisions of the testator's will in light of section 2056 of the Internal Revenue Code, as interpreted by section 20.2056(b)–5(e) [2] of the

Treasury Regulations and Pierpont v. CIR, 336 F.2d 277 (4th Cir. 1964), the District Court correctly concluded that Maryland law was determinative of the extent of the power granted in the will.[3] Then, reviewing the Maryland decisions, the court ruled that despite the language of the will, the widow was not authorized to appoint the principal of the trust to herself or her estate as required in order to qualify for the marital deduction under section 2056(b) (5) of the Code.

On appeal, both the taxpayer and the Government have renewed their substantive arguments; certain procedural arguments made by the Government in the District Court are not pressed in this court. With respect to whether the language used in the will was sufficient to allow the wife to appoint to herself or her estate, both sides have discussed Frank v. Frank, 253 Md. 413, 253 A.2d 377 (1969), which was decided subsequently to the District Court's decision. After examining the Code, the Treasury Regulations, and the applicable Maryland law, we agree with the taxpayer that the language used by the testator is effective to take full advantage of the marital deduction, in that it does allow the wife to appoint the trust principal to herself or her estate.

Section 20.2056(b)–5(e) of the Treasury Regulations provides that in determining whether the requirements of section 2056(b) (5) of the Code have

---

tion thereof, whether exercisable by will or during life, is exercisable by such spouse alone and in all events.

2. Treas.Reg. § 20.2056(b)–5(e), *Application of local law*. In determining whether or not the conditions set forth in paragraph (a) (1) through (5) of this section are satisfied by the instrument of transfer, regard is to be had to the applicable provisions of the law of the jurisdiction under which the interest passes and, if the transfer is in trust, the applicable provisions of the law governing the administration of the trust. For example, silence of a trust instrument as to the frequency of payment will not be regarded as a failure to satisfy the condition set forth in paragraph (a) (2) of this section that in-

come must be payable to the surviving spouse annually or more frequently unless the applicable law permits payment to be made less frequently than annually. The principles outlined in this paragraph and paragraphs (f) and (g) of this section which are applied in determining whether transfers in trust meet such conditions are equally applicable in ascertaining whether, in the case of interests not in trust, the surviving spouse has the equivalent in rights over income and over the property.

3. *See generally*, Commissioner of Internal Revenue v. Estates of Bosch, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967).

been met, "regard is to be had to the applicable provisions of the law of the jurisdiction under which the interest passes * * *." Accordingly, as stated above, the law of Maryland must be applied in determining the character of the power given the wife. Pierpont v. CIR, *supra,* and cases cited therein, 336 F.2d at 281.

As Chief Judge Hammond, in Frank v. Frank, *supra,* at 415, 253 A.2d 377, characterized the Maryland law on testamentary powers of appointment, it is "unusual if not unique." This "rather strange animal"[4] was born in Balls v. Dampman, 69 Md. 390, 16 A. 16, (1888). There, a husband gave his wife the power "to will and dispose of the [real estate given her for life] in such manner as she may see fit * * *." 69 Md. at 391, 16 A. at 17. The Maryland Court of Appeals held that she had

> only the power to appoint—that is, to name by will—the person or persons to whom the property should go; and she had no authority to devise it for the payment of her debts,—that is, to encumber or consume it altogether for her own use. The construction insisted on [by the donee] would, if adopted, practically convert her from a mere life-tenant into an owner of the fee.

69 Md. at 394, 395, 16 A. at 18.

The reasoning of this decision is understandable in light of the legal concepts prevalent at the time it was rendered.[5] In 1888, as is manifested by

the last sentence quoted above from *Balls,* the Maryland Court of Appeals was primarily concerned that the creation of a life tenancy with an unrestricted power of appointment would merge the estates into a fee simple absolute, thus defeating the testator's intention. Therefore, the court held that the wife had been granted no power to encumber or consume the property entirely for her own use.

Later cases, both in the Court of Appeals of Maryland and in our court, have reiterated this Maryland rule where the language employed, in granting the power, was "to such person or persons as she may limit, nominate and appoint" (Lamkin v. Safe Deposit & Trust Co., 192 Md. 472, 475, 64 A.2d 704, 707, [1948]), "for the use and behoof of such person or persons as she, by her last will * * * shall have named * * * to take and have the same" (Leser v. Burnet, 46 F.2d 756, 757–758 [4th Cir. 1931]), "in such manner and proportions as my said wife may designate and appoint in her Last Will and Testament" (Pierpont v. CIR, *supra,* 336 F.2d at 279), and "I hereby confer upon my said wife full and complete testamentary power of disposition" (Frank v. Frank, *supra,* 253 Md. at 415, 253 A.2d at 378).

However, with developments in the law of trusts and estates, the courts interpreting Maryland law have come to reflect a more modern view, *viz.,* that while it would be an impermissible frustration of the donor's desire if creditors of the donee were allowed to benefit

---

4. Pierpont v. CIR, 336 F.2d 277, 283 (4th Cir. 1964), quoted in Frank v. Frank, 253 Md. 413, 420, 253 A.2d 377 (1969).

5. According to Professor Powell:
   In the United States, prior to 1900, powers of appointment played a negligible role. Instruments seldom created them. Reported opinions concerning them were few and tended to reach conclusions by uncritical citation of English decisions. After the turn of the century law professors began to write about them. Lawyers hesitantly began to use them in wills and inter vivos trusts. It was discovered that tax sav-

ings could be gained by their employment. This discovery acquired enhanced importance as tax rates mounted. When the *Restatement of the Law of Property* reached the field of future interests, it was realized that a unique opportunity existed for the doing of a highly important task concerning powers of appointment. The quantity of American decisions was still so slight that in nearly all states many important aspects of the law remained open and in many states the whole field was uncrystallized.

3 R. R. Powell, Real Property, 336 (1967).

from the donor's property in the absence of a clear statement that the donor so intended, yet, where he sufficiently expresses his desire to give the donee the power to appoint to herself or her estate, this intent must likewise not be frustrated.

The current approach is illustrated by Leser v. Burnet, *supra*, where Judge Parker, speaking for this court, observed:

> A general power [*i. e.*, a broad general power including the power of the donee to appoint to herself or her estate] could doubtless be created in Maryland by expressing in the language creating it what is held to be implied in most other jurisdictions, viz., that the donee may exercise same for his own benefit or for the benefit of his creditors; but unless this is expressed, the power under the Maryland decisions is not general, but limited; and being limited, it does not come within the meaning of a general power of appointment as that term is used in the language of the revenue act.

46 F.2d at 761.

The present Maryland Court has shown itself hospitable to this approach. Referring to the above language of Judge Parker, Chief Judge Hammond noted in *Frank* that, "Leser v. Burnet has been considered as representing a valid expression of Maryland law by commentators." (citations omitted) 253 Md. at 418, 253 A.2d at 380. And Judge Bell, in *Pierpont*, stated, "We must conclude, therefore, that Leser v. Burnet, 46 F.2d 756 (4th Cir. 1931), is not at variance with the way the Maryland Court of Appeals would decide the issue were it called upon for a specific holding and is controlling on the question we face here." 336 F.2d at 283. This statement of the Maryland Law was endorsed in *Frank*, 253 Md. at 419, 253 A.2d 377.

We adhere to the Maryland law as enunciated by its highest court; in our view, however, the District Court erred in holding that the testamentary provi-

sions in question failed to meet the statutory requirements of section 2056(b)(5) of the Internal Revenue Code. The words used by this testator go far beyond any language considered in the cases adjudicated under Maryland law.

In no case cited in either brief, or that has come to our attention, did the testator actually use the words "general power of appointment," much less did he in the same breath make specific reference to "the marital deduction as provided by the Internal Revenue Code of 1954." It is noteworthy that in *Pierpont*, the testator did not refer specifically to the marital deduction as such, although he adopted, to a certain extent, language of the Code. *Pierpont* is readily distinguishable, however, in that the testator's words were "in such manner and proportions as my said wife may designate and appoint in her Last Will and Testament." This language clearly fell short of the marital deduction requirements, since it did not, even by inference, authorize the wife to appoint to herself or her estate.

It is singularly important to note that in the instant case, by contrast, the testator employed unmistakably precise language. Mr. Leahy manifested a clear and forthright desire to clothe his widow with the "general power of appointment" necessary to accomplish the marital deduction and by express reference brought the power he created squarely within the Code's requirements.

Returning to the Internal Revenue Code, we are aided in interpreting Item Second of the will by the provisions of section 2041(b)(1):

> *General power of appointment.—* The term "general power of appointment" means a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate * * *.

This is the definition the testator embraced by his explicit reference to the provisions of the Internal Revenue Code.

Section 2041 of the Code operates to include property in the gross estate of

the donee of a general power of appointment. This is a corollary to the marital deduction provisions of section 2056(b)(5) which are intended to exclude the property from the gross estate of a donor who complies with the statutory provisions for the marital deduction.

These provisions were designed to eliminate the tax advantages enjoyed by spouses in community property states over those in common law jurisdictions. They are comparatively recent additions to the Internal Revenue Code, having been introduced by the Revenue Act of 1948. The Senate Committee Report on the bill, referring to the marital deduction provisions, stated:

> The provisions of subparagraph (F) of section 812(e)(1) [the predecessor of section 2056(b)(5)] under the bill as it passed the House have been expanded in your committee bill. These provisions have the effect of allowing a marital deduction with respect to the value of property transferred in trust by or at the direction of the decedent where the surviving spouse, by reason of her right to the income and a power of appointment, is the virtual owner of the property. This provision is designed to allow the marital deduction for such cases where the value of the property over which the surviving spouse has a power of appointment will (if not consumed) be subject to either the estate tax or the gift tax in the case of such surviving spouse.

S.Rep. No. 1013 (Part II), 80th Cong., 2d Sess. (1948), 2 United States Code Congressional Service, 80th Cong., 2d Sess. (1948), pp. 1221, 1238.

In the case before us, it is plain that the testator gives his widow a general power of appointment, as that term is used in the Internal Revenue Code. This inexorably results in the inclusion of the subject property in her gross estate under section 2041. The definition of general power of appointment in section 2041(b)(1) includes a power exercisable in favor of the decedent or her estate. Thus, the widow here is given

specific authorization to appoint to herself or her estate, as the testator obviously was not referring to a Maryland (limited) general power of appointment. By his use of the words "general power of appointment," coupled with his expressed "intention to take advantage of the marital deduction as provided by the Internal Revenue Code of 1954," the testator was clearly referring to the general power of appointment provisions of section 2041 of the Code, which empower the donee to appoint to herself or her estate.

This court is pursuaded that the Maryland Court of Appeals would reasonably place this construction upon the will provisions; namely, that the will of Arthur Hamilton Leahy gives his widow the power to appoint to herself or her estate.

We readily honor the Maryland rule governing powers of appointment where it applies. We are not permitted, however, to extend that rule to an entirely distinguishable situation. Never has the Maryland Court said that a testator may not, if he expresses himself with sufficient clarity, create a general power of appointment in the broad sense. Indeed, as we have seen from that court's acceptance in the *Frank* case of the view expressed in Leser v. Burnet, *supra*, "a general power [in the broad sense] could doubtless be created in Maryland." Needless to say, in the decided cases the donees were not clothed with full power to appoint to themselves or their estates. We think the Maryland Court would agree with us that in the present instance this has been accomplished by the testator.

Therefore, it is our conclusion that Item Second of the will satisfies the requirements of section 2056(b)(5) of the Internal Revenue Code and qualifies for the marital deduction.

Our decision today gives effect to the testator's clearly expressed intent, accomplishes the just purposes of the federal Act, and is fully consonant with the Maryland law.

Accordingly, the judgment of the District Court is

Reversed and the case is remanded for the entry of judgment consistent with this opinion.